UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUL 2 1 2009 ★

BROOKLYN OFFICE

---

CATHERINA LORENA CENZON-DECARLO,

Plaintiff,

v.

THE MOUNT SINAI HOSPITAL, a New York Not-for-
Profit Corporation,

Defendant.

---

Civil Action No:

09 3120

VERIFIED COMPLAINT

Jury Trial Demanded

DEARIE, CH. J.

J. ORENSTEIN, M.J.

## PRELIMINARY STATEMENT

1.     This action seeks injunctive and declaratory relief on behalf of CATHERINA
LORENA CENZON-DECARLO (herein "MRS. DECARLO"), a nurse who in May 2009 was
forced by Defendant THE MOUNT SINAI HOSPITAL ("Mount Sinai"), to assist in the abortion
of a 22-week-old preborn child despite her longstanding religious objection to participating in
lethal abortions.  Mount Sinai blatantly violated federal law by threatening Mrs. DeCarlo's job
and nursing license unless she would assist in the late-term abortion.  Then when Mrs. DeCarlo
tried to use appropriate channels to seek to have her rights of conscience respected, Mount Sinai
condoned the compulsion it had exerted against Mrs. DeCarlo in May, declared that she could
again be subject to such a mandate at Mount Sinai's arbitrary discretion, and even resorted to
retaliation and brash bullying tactics to get Mrs. DeCarlo to abandon her rights.

2.     Mrs. DeCarlo asks the Court to order Mount Sinai to refrain from mandating
employees to assist in abortion over their conscientious objection.  Pursuant to the Church
Amendment, 42 U.S.C. § 300a7(c), which protects  the right of conscience of pro-life health care

1

workers employed by recipients of federal Health and Human Services funding, Mrs. DeCarlo also seeks an order requiring Mount Sinai to disgorge an appropriate portion of the millions of dollars in federal funding it has received in the last several years, and ordering that the hospital be disqualified from receiving additional funding unless and until it demonstrates compliance with the Church Amendment.

3.      Mrs. DeCarlo also seeks compensatory and punitive damages for the psychological and other harms that she incurred from being forced to assist in the 22-week abortion on May 24, and for future financial harms from the retaliatory actions that Mount Sinai is taking against her by depriving her of the ability to work on-call shifts solely because of her religious objection to assisting in abortion.

## JURISDICTION AND VENUE

4.      Jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. § 1331 and 42 U.S.C. § 300a7(c) as an action arising under the laws of the United States.

5.      This Court has authority to declare the rights and legal relations of the parties and to order further relief, pursuant to 28 U.S.C. §§ 2201–02, because this is a case of actual controversy within this Court's jurisdiction.

6.      Venue is proper under 28 U.S.C. § 1391(b)(1) and (c). Mount Sinai owns and operates a hospital in Queens, New York, called Mount Sinai Hospital at Queens, located at 2510 30th Avenue, Astoria, New York 11102.[1] This subjects Mount Sinai to personal jurisdiction in the Eastern District of New York, making venue proper in this district.

## PARTIES

---

[1] Website, available at http://www.mshq.org/Who%20We%20Are/Mount%20Sinai%20Queens%20History (last visited on July 10. 2009).

7.     Plaintiff Catherina Lorena Cenzon-DeCarlo is a natural person who at all times relevant to this action has resided in Brooklyn, New York, and has been employed by Mount Sinai Hospital.

8.     Mrs. DeCarlo is a citizen of the Philippines.  She has been a permanent legal resident of the United States since 2001 and is married to an American citizen, Paul DeCarlo, also of Brooklyn.

9.     Defendant The Mount Sinai Hospital is a not-for-profit corporation organized under the laws of the State of New York, and is located at One Gustave L. Levy Place, New York, New York, 10029 and at 2510 30th Avenue, Astoria, New York 11102.

## STATEMENT OF FACTS

10.     Catherina Cenzon DeCarlo has devoted her career to the profession of operating room nursing.

11.     She chose nursing over more lucrative careers because of her passion for helping patients and the fulfillment she receives from assisting in a wide variety of specialized procedures with excellence and professionalism.

12.     Mrs. DeCarlo is a practicing member of the Roman Catholic Church.  Her uncle is a bishop of that Church in the Philippines, and she was raised in a very devout Catholic family that was immersed in the religious culture of her community.

13.     She has a strongly-held religious and moral belief that she may not participate in abortion procedures that kill preborn children.

14.     Mrs. DeCarlo received her initial training and experience in nursing in her home country of the Philippines.

3

15.    Mrs. DeCarlo graduated with a Bachelor of Science degree in nursing from St. Louis University in Baguio City, Philippines, in 1995.  She passed the Philippine Board to become a Registered Nurse, she was certified by the Commission on Graduates of Foreign Nursing Schools, and she passed the TOEFL and TSE exams in English language proficiency. Mrs. DeCarlo as issued a visa screen certificate.

16.    Mrs. DeCarlo served for one year in the Philippine National Red Cross working in several areas including rescue and first aid training.  Then she worked for one year as a volunteer nurse in the medical unit of Baguio General Hospital and Medical Center.

17.    In 1997 Mrs. DeCarlo switched fields and began working as a pharmaceutical representative, though she continued volunteering as a nurse during that time.  Despite making more money than she had as a nurse, she missed the rewards and challenges of her nursing career.

18.    Therefore Mrs. DeCarlo returned to nursing full-time. In 1998 she began as a staff nurse at The Medical City, a major hospital in Mandaluyong City, Philippines, near Manila.

19.    While at The Medical City, she worked as an operating room, labor and delivery, and recovery room nurse.  She also specialized in kidney transplants, ophthalmic, ear/nose/throat, plastic and vascular surgeries.

20.    During her time at Medical City, Mrs. DeCarlo treated many patients with pregnancy complications, including many with preeclampsia.  She gained extensive experience in managing such patients with the goal of preserving the life of both the woman and her unborn child.  She gained knowledge of the pathologies that can arise in such patients and how to treat them.  She saw that as long as they were properly monitored and medicated, patients could be

successfully managed to a stage of pregnancy where the child could be delivered alive with a good chance of survival.

21.     While at Medical City Mrs. DeCarlo spoke with colleagues who had trained and worked in the United States.  She learned that America offered experienced nurses such as herself tremendous opportunities to work on challenging and interesting cases, and to have the freedom to excel in their professions if they worked hard and continued to improve their skills.

22.     Inspired by these stories, Mrs. DeCarlo moved to New York in 2001 to work under an alien worker immigrant visa.

23.     Mrs. DeCarlo initially held staff nursing jobs at a rehabilitation facility and then at an acute care teaching hospital in Far Rockaway, New York.  At the latter, she served in the endoscopy, ambulatory surgery and medical-surgical units and assisted in many surgical cases as well as providing total nursing care of patients.

24.     In 2003 Mrs. DeCarlo was hired as an operating room and endoscopy staff nurse at a community teaching hospital in Far Rockaway, New York.  She assumed circulating and scrub nurse responsibilities and covered many surgical cases in an environment where comprehensive knowledge and practice of nursing theories were promoted.

25.     In July 2004, Mrs. DeCarlo met Paul DeCarlo of Brooklyn, and they married in 2005.

26.     At the time of this lawsuit Mr. and Mrs. DeCarlo have a one-year-old child.

27.     The DeCarlos are dependent on both Mr. and Mrs. DeCarlo's salaries, including the many on-call shifts that Mrs. DeCarlo works each month at Mount Sinai.

28.     In August 2004, Mrs. DeCarlo was hired as an operating room nurse at The Mount Sinai Hospital.

29.     Mrs. DeCarlo wanted to work at Mount Sinai because of their expertise in various and complicated surgeries, including liver transplants and neurosurgery.

30.     At Mount Sinai, Mrs. DeCarlo has received exemplary performance reviews.

31.     She has also earned the respect and professional appreciation of her superiors and of the doctors on whose cases she has worked.

32.     Mrs. DeCarlo is recognized at Mount Sinai as having a high level of expertise among her operating room nurse peers, being experienced and highly competent in neurosurgery, gynecology, urology, orthopedics, ophthalmology, and liver transplants, as well as general surgery, vascular, otolaryngology, gastrointestinal, oral surgery, respiratory surgery, and plastic surgery.

33.     During her job interview with Mount Sinai in 2004, Mount Sinai officials asked Mrs. DeCarlo about her willingness to assist in abortions.

34.     Mrs. DeCarlo communicated that because of her religious views she objected to assisting in any abortion of children still living, though she did not have an objection to assisting with the removal of babies who had miscarried.

35.     The Mount Sinai officials who hired Mrs. DeCarlo expressed no concerns with her objection to assisting in abortion.

36.     When Mrs. DeCarlo was hired in 2004 and continuing through the present, Mount Sinai Hospital has had a written policy by which it represents to employees that they may, without penalty, object to assisting in abortion consistent with patient rights, care and treatment. That policy, Human Resources Policy—Exclusion from Patient Care—Employee Rights #15.3, is attached as Exhibit A.

37.     As part of her application process, Mrs. DeCarlo filled out a form given to her by Mount Sinai, which explicitly gave her the opportunity to object to participation in abortion.

38.     Consistent with her statements during her job interviews, Mrs. DeCarlo filled out the sections of that form expressing her objection to participation in abortion.

39.     Neither her oral nor her written objection to participation in abortion was an obstacle to Mrs. DeCarlo being hired in August 2004.

40.     In addition to working full-time work weeks at Mount Sinai, Mrs. DeCarlo often worked on-call shifts on weekends and holidays.

41.     On-call shifts are a benefit and privilege of employment for qualified nursing employees at Mount Sinai such as Mrs. DeCarlo.

42.     Qualified employees are allowed to volunteer for these on-call shifts, but if there are not enough volunteers, Mount Sinai will assign employees to the shifts on a mandatory basis.

43.     Mount Sinai required Mrs. DeCarlo to be willing to work on-call shifts as a condition of employment.

44.     Employees on the on-call shifts earn a fraction of their regular hourly rate when not called, and an increased hourly rate when they are called.

45.     The on-call shifts are separated into three teams according to employee expertise.

46.     "Team 1" handles surgeries of a basic expertise level for operating room nurses at Mount Sinai, and its scope includes general surgery, vascular, otolaryngology, G.I., oral surgery, respiratory surgery, and plastic surgery.

47.     "Team 2" handles complex and specialized surgeries, including neurosurgery, gynecology, urology, orthopedics, and ophthalmology.

48.     A third team handles liver transplants, also a specialized procedure.

7

49.     Despite these team designations, nurses who volunteer for and are serving on one team may be assigned by Mount Sinai to handle a surgery encompassed by another team if other nurses are unavailable and if the nurse has the requisite competence for the procedure.

50.     Mrs. DeCarlo is experienced and competent in the surgeries of all three teams.

51.     Mrs. DeCarlo is so proficient in Team 2 surgeries that Mt. Sinai has asked her on many occasions to take Team 2 calls when other nurses have chosen not to take them.

52.     Mrs. DeCarlo has always performed her on-call duties with the utmost level of expertise and professionalism.

53.     In a typical month, Mrs. DeCarlo has taken 8-9 on-call shifts of various kinds, tending to focus on Team 2 surgeries.

54.     Mount Sinai also performs abortions, which are generally scheduled for Saturday mornings.

55.     Many abortions that occur at Mount Sinai outside of Saturday mornings are dilation and curettage (D&C) first-trimester abortions.

56.     D&C is also used in cases where preborn children have miscarried, in order to remove the baby and other uterine contents from the woman.

57.     In a dilation and evacuation (D&E) abortion, the mother's cervix is dilated, and after sufficient dilation the mother is placed under anesthesia or sedation.  The doctor then inserts grasping forceps through the mother's cervix and into the uterus.  The doctor grips a part of the preborn child with the forceps and pulls it back through the cervix and vagina even after meeting resistance from the cervix.  That friction causes the preborn child to tear apart.  The process of evacuating the preborn child piece by piece continues until the child has been completely removed.

8

58.     Even though gynecology is a Team 2 category, D&C and D&E abortions are sufficiently simple that operating room nurses who qualify for Team 1 are technically competent to participate in those procedures.

59.     Mrs. DeCarlo has handled and is willing to participate in D&C miscarriage cases, but not in D&C or other abortion cases where the procedure intentionally kills the child, such as D&E abortions.

60.     Mount Sinai has known Mrs. DeCarlo's views on her willingness to assist in abortion since it hired her.

61.     Mount Sinai has a group of nurses who are willing to participate in abortions and regularly do so when asked.

62.     From August 2004 to mid-May 2009, there were some times when Mount Sinai specifically avoided assigning Mrs. DeCarlo to abortion cases by means of choosing not to call Mrs. DeCarlo to those cases in the first place.

63.     In at least one instance between August 2004 to mid-May 2009, when Mrs. DeCarlo was called to work on an abortion case, Mrs. DeCarlo clarified that she only handles miscarriage cases, and Mount Sinai arranged for another nurse to take the case.

64.     Upon information and belief, from August 2004 to mid-May 2009 Mount Sinai sometimes violated the right of conscience of other nurses by forcing them to assist in abortions to which they expressed a religious or moral objection.

65.     On Sunday, May 24, 2009, Mrs. DeCarlo was working on call on Team 2.

66.     Her shift began at 7:00 a.m.

67.     Team 1 and 2 on-call nurses have the option of being off campus if they can arrive at the hospital within 30 minutes of the call and be scrubbed within 5 minutes of arrival. Alternatively, the nurses can stay in the on-call room at Mount Sinai during their shift.

68.     Mrs. DeCarlo always stays in the on-call room for her on-call shifts, and that is where she was at 7:00 am on May 24th.

69.     Earlier in the morning of May 24th, Dr. Michael Silverstein, Assistant Clinical Professor at the medical school that is part of Mount Sinai, had scheduled a woman via telephone through the OR receptionist for a 20-week age of gestation abortion (that later was revealed to be a 22-week age of gestation abortion) to occur that morning.

70.     The abortion would be done by D&E on a preborn child still alive.

71.     At 7:15 am, Mrs. DeCarlo walked to the receptionist to see if she had been assigned to any surgeries.

72.     The receptionist told her she was assigned to a "D&C" case.

73.     Neither the receptionist (according to what he told Mrs. DeCarlo later) nor Mrs. DeCarlo knew that she was being assigned to a second-trimester abortion on a live child.

74.     Mrs. DeCarlo immediately went to the assigned surgery room and began preparing the room.  The patient was not yet present.

75.     While she was in the room, the case cart arrived with instruments that Mrs. DeCarlo recognized as being possibly used for non-miscarriage abortions.

76.     She then examined the paperwork for the case more closely.  The case form that Mrs. DeCarlo saw had virtually illegible handwriting.

77.     Mrs. DeCarlo began to wonder whether the abortion was on a live child, and what the patient's diagnosis was.

10

78.     At 7:30 am, Mrs. DeCarlo called the resident assigned to the case, Dr. Noel Strong.

79.     She asked Dr. Strong about the case.  Dr. Strong explained to her that the woman was diagnosed with preeclampsia, and that the preborn child in the case was still alive.

80.     Mrs. DeCarlo then knew that she had been assigned to a case where a living 22-week-old preborn child would be dismembered and killed.

81.     Mrs. DeCarlo also knew from experience that the mother had a diagnosis that she had personally treated in many women without any need to kill the child.

82.     At 7:30 am, Mrs. DeCarlo, consistent with her prior written objection to participating in abortion, unequivocally expressed to Dr. Strong that she would not participate in the abortion.

83.     Mrs. DeCarlo told Dr. Strong not to send the case up to the room until a nurse was assigned who would handle the case.

84.     Mrs. DeCarlo then immediately called her nursing supervisor, Ms. Fran Carpo, and expressed her objection to participating in this case.

85.     Mrs. DeCarlo reminded Ms. Carpo that her religious objection was known, was longstanding, and that she had not previously been forced to assist in an abortion

86.     Ms. Carpo said she would call her supervisor, Ms. Ella Shapiro, to ask whether Mrs. DeCarlo could be excused from the case.

87.     Ms. Carpo said that in the meantime Mrs. DeCarlo should call the receptionist to begin gathering contact information for other nurses who could cover this case.  Mrs. DeCarlo did so.

11

88.     In a few minutes Ms. Carpo called Mrs. DeCarlo back and told her that Mrs. DeCarlo must assist in the 22-week D&E abortion.

89.     Mrs. DeCarlo repeated her longstanding objection and pleaded with Ms. Carpo that Mount Sinai not force her to assist in this abortion against her strongly held religious beliefs.

90.     Mrs. DeCarlo asked Ms. Carpo to call other nurses to the case since so little time had elapsed before Mrs. DeCarlo had voiced her objection.

91.     Ms. Carpo said that Ms. Shapiro had insisted that Mrs. DeCarlo assist on the case, and had prohibited Ms. Carpo from even trying to call other nurses to cover the case.

92.     Ms. Carpo also said that Dr. Silverstein had yelled at her over the phone in opposition to any delay in the case as a result of Mrs. DeCarlo's request for accommodation.

93.     Ms. Carpo claimed that the mother could die if Mrs. DeCarlo did not assist in the abortion.

94.     Mrs. DeCarlo explained to Ms. Carpo that the patient could not be in such immediate danger because based on what Dr. Silverstein had told Ms. Carpo over the phone, the patient was not even on magnesium therapy, which is a medical requirement for preeclamptic patients in crisis.  But Ms. Carpo rejected this argument.

95.     Neither Mount Sinai, nor the patient's care, would have been prejudiced in any way if Mount Sinai had called another nurse to take the case when Mrs. DeCarlo expressed her specific objection 15 minutes after she was called to the case.

96.     Ms. Carpo herself was qualified to perform this case herself and could have done so without any significant delay in the case.

97.     Ms. Carpo said that if Mrs. DeCarlo did not participate in the case, Mrs. DeCarlo would be brought up on charges of "insubordination and patient abandonment."

12

98.    A charge of patient abandonment would severely jeopardize Mrs. DeCarlo's employment and her nursing license and consequently her career and her and her family's livelihood.

99.    A charge of insubordination would severely jeopardize Mrs. DeCarlo's employment and her future employability.

100.    Mrs. DeCarlo began to cry and said she would even get her priest on the phone to explain that she could not assist in the killing of a 22-week-old child, and pleaded for this reason to be excused from the case.

101.    Despite all of Mrs. DeCarlo's urgings, Ms. Carpo insisted that Mrs. DeCarlo participate in the abortion case.

102.    Mrs. DeCarlo was distraught and devastated because Mrs. DeCarlo and her family could not afford for her to lose her job or her nursing license.

103.    Mrs. DeCarlo therefore stated that she was acceding to Ms. Carpo's dictate, though in protest.

104.    Mrs. DeCarlo returned to the surgery room and finished her pre-surgery duties.

105.    She treated the patient with utmost respect and professionalism.

106.    She made sure that the patient had no knowledge of her opposition to participating.

107.    Nevertheless, the scrub technician and the anesthesiologist on the case expressed surprise to see Mrs. DeCarlo assisting.

108.    Mrs. DeCarlo explained to them, outside of the patient's presence, that she was being forced to participate under protest, but that she would maintain excellent care for the patient.

13

109. The scrub technician and anesthesiologist expressed complete sympathy with Mrs. DeCarlo.

110. By being forced to participate in the abortion, Mount Sinai forced Mrs. DeCarlo to witness the killing of a 22-week-old preborn child by dismemberment.

111. Because it was included in the requirements of her nursing duties as an assistant on the case, Mount Sinai forced Mrs. DeCarlo to watch the doctor remove the bloody arms and legs of the child from its mother's body with forceps.

112. Because it was included in the requirements of her nursing duties as an assistant on the case, Mount Sinai forced Mrs. DeCarlo to view the bloody body parts of the 22-week-old preborn child in the specimen cup, to put saline in the cup, and to take it to the specimen area.

113. Mount Sinai's protocols contain several categories of surgeries to identify their urgency and priority, including various levels of emergencies. Exhibit B.

114. Surgeries placed in Category I involve "Patients requiring immediate surgical intervention for life or limb threatening conditions." *Id.*

115. None of the Mount Sinai officials or doctors on this abortion case labeled it a surgery requiring immediate surgical intervention for life or limb threatening conditions.

116. Instead Dr. Silverstein labeled the abortion a Category II, which applies to "Patients requiring surgery within 6 hours of identification and notification." *Id.*

117. The Category II designation of this abortion shows that the patient did not require Mrs. DeCarlo's immediate surgical intervention assistance.

118. At 7:30 a.m. when Mrs. DeCarlo was ordered to assist in this abortion, there was plenty of time to find a nurse to assist the surgery even within the specifications of Category II.

14

119.    This abortion did not even rise to the level of a Category II surgery that had to be done within 6 hours.

120.    Likewise, there was no need to perform actions within six hours that intentionally killed the child such as a D&E abortion.

121.    The patient could have been maintained in stable condition until Mount Sinai assigned a nurse other than Mrs. DeCarlo to the case who would be willing to assist the abortion.

122.    Mrs. DeCarlo observed no indications that this abortion was a medical emergency requiring her assistance.

123.    For example, when the patient was brought into the room for surgery, her blood pressure was not at a crisis value, and other standard measures for patients in crisis had not been taken on this patient.

124.    Preeclamptic patients can be kept stable until later in pregnancy when labor can be induced or a c-section performed so that the child is delivered intact, is not directly killed, and has a chance to survive.

125.    Mount Sinai violated HR/ER # 15.3 when Ms. Carpo and Ms. Shapiro ordered Mrs. DeCarlo to assist in this abortion.

126.    Being forced to assist in this abortion has caused Mrs. DeCarlo extreme emotional, psychological, and spiritual suffering.

127.    Mrs. DeCarlo has experienced nightmares about children in distress, has lost sleep, and has suffered in her personal and religious relationships because of being forced to assist in this abortion.

128.    Mrs. DeCarlo has had to receive treatment from her attending physician to address her psychological symptoms.  He prescribed medication to help her sleep.

129.    On the next business day after the abortion, Mrs. DeCarlo brought complaints to her supervisors and her union about having been forced to assist in an abortion.

130.    Based on being forced to assist in this abortion, Mrs. DeCarlo caused a grievance to be filed with her union and supervisors for violation of the collective bargaining agreement between Mount Sinai and the New York State Nurses Association.

131.    In informal conversations with Mrs. DeCarlo and union representatives, Mount Sinai officials stated that employees must be willing to assist in abortions in circumstances that Mount Sinai determines, including the circumstances that Mrs. DeCarlo suffered on May 24th.

132.    Abortion cases such as the one that occurred on May 24th can arise during on-call shifts or during the work week.

133.    Consequently, whether or not Mrs. DeCarlo is assigned to further on-call duty, she reasonably fears that she could again be compelled to participate in an abortion.

134.    After having filed her grievance, Mrs. DeCarlo volunteered as usual to be assigned to on-call cases for the next month not yet scheduled, August 2009.

135.    On July 1, 2009, the on-call schedule for August was finalized.

136.    Mrs. DeCarlo was given only one on-call shift in August 2009, on one liver team shift.

137.    Although Mount Sinai officials initially claimed that the failure to assign Mrs. DeCarlo to her usual 8–9 shifts in August was merely inadvertent, the hospital's subsequent actions indicate that it intends to retaliate against Mrs. DeCarlo because of her request that her religious objection to assisting in abortion be honored, and because of the grievance procedure that she filed.

138.     On July 9, 2009, Mrs. DeCarlo's union representative Crystal Shipp called her and informed her that Mount Sinai wanted to meet on Thursday, July 16, at noon, to discuss the grievance and whether Mrs. DeCarlo may object to assisting in abortion.

139.     On July 16, Mrs. DeCarlo and her attorney Joseph Ruta presented themselves at the meeting location.

140.     Ms. Shipp and another representative of the union Ms. Lucille Sollazzo informed Mrs. DeCarlo that neither the union nor Mount Sinai would conduct the meeting if Mr. Ruta was present.

141.     Nothing in the bargaining agreement prevents Mr. Ruta from being present at such a meeting.

142.     Because Mr. Ruta was present, Mount Sinai and the union cancelled the meeting.

143.     This violated the union agreement, which entitles Mrs. DeCarlo to an opportunity to resolve the grievance process through such a meeting.

144.     Just a few hours later on July 16, Mrs. DeCarlo was cornered in the hospital by Beata Mastalerz, her clinical manager.  Ms. Mastalerz asked Mrs. DeCarlo to come into her office.

145.     Ms. Mastalerz told Mrs. DeCarlo that Mrs. DeCarlo's request to be assigned to on-call shifts in September would be conditioned upon Mrs. DeCarlo being willing to write and sign a statement promising that she was willing to assist in D&C and D&E abortions if the hospital declared that such cases were "emergencies" requiring her assistance.

146.     This requirement violates 42 U.S.C. § 300a-7(c).

147.     Mrs. DeCarlo refused to sign such a statement, saying that she had already signed a notice that she objects to assisting in abortion pursuant to written hospital policy.

17

148.    Ms. Fran Carpo then came into the room and attempted to convince Mrs. DeCarlo to write and sign such a statement. Ms. Carpo was one of the Mount Sinai officials who was to be at the cancelled meeting earlier that day.

149.    Mrs. DeCarlo began to cry and continued to refuse, telling Ms. Mastalerz and Ms. Carpo that she had always opposed assisting abortion from the day she was hired, and that other nurses also oppose assisting abortion but they were not being required to sign statements agreeing to assist abortions as a condition that they be assigned to on-call shifts.

150.    On information and belief, Mount Sinai has not imposed against any other nurse the requirement that they fill out a specific written expression of willingness to assist in some abortions as a condition of being assigned to on-call shifts.

151.    Mrs. DeCarlo asked to leave the room to compose herself but Ms. Mastalerz and Ms. Carpo refused, insisting that she sit down and continuing to try to convince her to sign away her objection to abortion.

152.    As Mrs. DeCarlo became more distraught she was finally able to convince Ms. Mastalerz and Ms. Carpo to allow her to leave to compose herself.

153.    By imposing this condition, Mount Sinai condoned and acquiesced in the illegal compulsion it had applied to Mrs. DeCarlo on May 24, and it imposed a policy by which it assumed the ability to compel health care personnel assistance in abortion at its discretion.

154.    Mrs. DeCarlo will suffer financial damage from being deprived of the income of working on-call shifts.

155.    Mount Sinai receives millions of dollars of federal funding administered by the United States Department of Health and Human Services ("HHS").

156.    In the past several years, Mount Sinai has received a grant, contract, loan, or loan guarantee under the Public Health Service Act [42 U.S.C. § 201 et seq.], the Community Mental Health Centers Act [42 U.S.C. § 2689 et seq.], and/or the Developmental Disabilities Services and Facilities Construction Act [42 U.S.C. § 6000 et seq.].

157.    In the past several years, Mount Sinai has received a grant or contract for biomedical or behavioral research under a program administered by HHS.

158.    Funds in the above-mentioned categories include funds described as follows:.

- The most recent report from HHS shows that Mount Sinai received over $211 million in federal discretionary grant dollars *in fiscal year 2007 alone*, ranking it 29th in the nation among grant recipients. Exhibit C.[2] Upon information and belief, Mount Sinai receives a similar amounts of funding every year, including 2008 and 2009.

- Mount Sinai regularly receives family planning grant funds as a delegate and clinic recognized by HHS's Office of Population Affairs. Exhibit D at 6.[3] Those funds originate in subchapter VIII of the Public Health Services Act, 42 U.S.C. § 300–300a-8.

- Mount Sinai received over $175,000 in 2007 and 2008 in grants for HIV-related dental health services. Exhibit E.[4] Those funds are managed by HHS's Health Resources and Services Administration and they originate from subchapter XXIV of the Public Health Services Act, 42 U.S.C. § 300ff–300ff-121.

- Mount Sinai participates in grant awards under the titles of the Center for Achieving and Sustaining Improved Health in Harlem, and Collaborations for Health Improvement in East Harlem—Project Heed. Exhibit F.[5] The grant program started in 2002 but has continued through 2009 and has totaled over $14 million. The grants are awarded through the National Institutes of Health's National Center on Minority Health and Health Disparities, and are authorized by subchapter III of the Public Health Services Act, 42 U.S.C. §§ 241, 285, & 287c-31–c-33.

- Mount Sinai received a $333,902 grant in late 2005 for construction and renovation of its

---

[2] Exhibit C was obtained from http://taggs.hhs.gov/AnnualReport/FY2007/documents/TAGGS_2007_Annual_Report.doc (last viewed July 17, 2009).
[3] Exhibit D was obtained from http://www.hhs.gov/opa/familyplanning/grantees/services/ and http://www.hhs.gov/opa/familyplanning/grantees/services/titlexgdcs_regii.pdf (last viewed July 17, 2009).
[4] Exhibit E was obtained from http://hab.hrsa.gov/programs/dentallist.htm (identifying Mount Sinai), http://hab.hrsa.gov/treatmentmodernization/dentalrosters.htm (2007 award amount), and http://hab.hrsa.gov/treatmentmodernization/dentalrosters2008.htm (2008 award amount) (last viewed July 17, 2009).
[5] Exhibit F was obtained through conducting a search at http://taggs.hhs.gov (last viewed July 17, 2009)

branch hospital in Queens, New York.  See Exhibit G.[6]  The grant was received through HHS's Health Resources and Services Administration and was funded through various subchapters of the Public Health Services Act.  See 118 Stat. 2809, 3122-23 (2005).

159.   By accepting the funds referred to above and other federal funding, Mount Sinai has voluntarily subjected itself to the Church Amendment, 42 U.S.C. § 300a-7(c).

160.   That section of the Church Amendment provides as follows:

(c) Discrimination prohibition

(1) No entity which receives a grant, contract, loan, or loan guarantee under the Public Health Service Act [42 U.S.C. § 201 et seq.], the Community Mental Health Centers Act [42 U.S.C. § 2689 et seq.], or the Developmental Disabilities Services and Facilities Construction Act [42 U.S.C. § 6000 et seq.] after June 18, 1973, may--

(A) discriminate in the employment, promotion, or termination of employment of any physician or other health care personnel, or

(B) discriminate in the extension of staff or other privileges to any physician or other health care personnel,

because he performed or assisted in the performance of a lawful sterilization procedure or abortion, because he refused to perform or assist in the performance of such a procedure or abortion on the grounds that his performance or assistance in the performance of the procedure or abortion would be contrary to his religious beliefs or moral convictions, or because of his religious beliefs or moral convictions respecting sterilization procedures or abortions.

(2) No entity which receives after July 12, 1974, a grant or contract for biomedical or behavioral research under any program administered by the Secretary of Health and Human Services may--

(A) discriminate in the employment, promotion, or termination of employment of any physician or other health care personnel, or

(B) discriminate in the extension of staff or other privileges to any physician or other health care personnel,

because he performed or assisted in the performance of any lawful health service or research activity, because he refused to perform or assist in the

---

[6] Exhibit G was obtained through conducting a search at http://taggs.hhs.gov (last viewed July 17, 2009)

20

performance of any such service or activity on the grounds that his performance or assistance in the performance of such service or activity would be contrary to his religious beliefs or moral convictions, or because of his religious beliefs or moral convictions respecting any such service or activity.

161.    There is no "medical necessity" exception to section (c) of the Church Amendment.

## FIRST CAUSE OF ACTION:
## VIOLATION OF THE CHURCH AMENDMENT
## 42 U.S.C. § 300a-7(c)

162.    The allegations of the paragraphs above are reasserted here.

163.    By threatening insubordination and patient abandonment against Mrs. DeCarlo unless she assisted in the abortion on May 24, 2009, Mount Sinai committed discrimination in the employment, promotion, or termination of employment of health care personnel, and discrimination in the extension of staff or other privileges to health care personnel in violation of 42 U.S.C. § 300a-7(c).

164.    By adopting a position that refuses to honor Mrs. DeCarlo's objection and the objections of other health care personnel to abortions in the future, but instead requires that they be willing to assist in abortions as Mount Sinai decides is necessary in its own discretion despite the health care personnel's religious objections, Mount Sinai continues to commit discrimination in the employment, promotion, or termination of employment of health care personnel, and discrimination in the extension of staff or other privileges to health care personnel in violation of 42 U.S.C. § 300a-7(c).

165.    By conditioning Mrs. DeCarlo's ability to work on-call shifts on the requirement that she promise that she is willing to assist in abortions, Mount Sinai is committing discrimination in the employment, promotion, or termination of employment of health care

personnel, and discrimination in the extension of staff or other privileges to health care personnel in violation of 42 U.S.C. § 300a-7(c), and is discriminatorily retaliating against her on the basis of her religious objection and her attempts to protect that objection in the bargaining agreement grievance procedure and by obtaining counsel.

166. Mount Sinai Hospital is liable for the discriminatory actions of Mrs. DeCarlo's superiors because they were following Mount Sinai's policy and practice that it may violate employee conscience rights if Mount Sinai officials believed it was required for patient care.

167. Mount Sinai Hospital is liable for the discriminatory actions of Mrs. DeCarlo's superiors because it acquiesced and subsequently condoned those actions.

168. Mount Sinai Hospital is liable for the discriminatory actions of Mrs. DeCarlo's superiors under the doctrine of respondeat superior, because those superiors were acting in the scope of their authority from Mount Sinai to alter the terms and conditions of her employment on condition that she succumb to a violation of her conscientious objection rights.

169. Mount Sinai Hospital is liable for discrimination against Mrs. DeCarlo by means of its current position that it has discretion to violate Mrs. DeCarlo's and other health care personnel's conscientious objection to abortion in the future.

170. Mrs. DeCarlo has suffered and continues to suffer emotional and psychological damages from the harm caused to her by Mount Sinai's discrimination.

171. Mrs. DeCarlo will suffer financial damages from Mount Sinai's discriminatory and retaliatory removal of her from on-call shifts on the condition that she sign away her religious objection to assisting in abortions.

172. Mrs. DeCarlo and other similarly situated pro-life employees continue to suffer irreparable harm by Mount Sinai's policy that employee conscience rights may be violated and

22

their work privileges be removed on condition of such violations, thereby giving rise to the need for injunctive relief against Mount Sinai.

**WHEREFORE**, Mrs. DeCarlo respectfully seeks judgment against the Mount Sinai Defendants as follows:

A.    A declaratory judgment finding that Mount Sinai Hospital has violated and continues to violate the Church Amendment, 42 U.S.C. § 300a7(c), and Mrs. DeCarlo's rights thereunder;

B.    An injunction:

1.  Ordering Defendants to comply with 42 U.S.C. § 300a7(c) by refraining from forcing Mrs. DeCarlo or any health care personnel to participate in abortion;

2.  Ordering Defendants to restore Mrs. DeCarlo to her past level of access to on-call teams and to honor her conscientious objection to participation in abortion on those teams;

3.  Ordering Defendants to disgorge the funds discussed in 42 U.S.C. § 300a7(c) as triggering that section's applicability, in an appropriate amount commensurate with Defendants' discriminatory actions to be determined at the Court's discretion and as a penalty for Defendants' violation of Mrs. DeCarlo's rights; and

4.  Prohibiting Defendants from receiving qualifying funds under 42 U.S.C. § 300a7(c) unless and until Defendants demonstrate compliance with the non-discrimination provisions of that section in police and practice.

C.    Damages, in an amount to be determined at trial, for all harms that Mrs. DeCarlo has suffered and will suffer because of Mount Sinai's violation of her rights under

42 U.S.C. § 300a7(c), as well as punitive damages for Mount Sinai's blatant

violation of employee rights under 42 U.S.C. § 300a7(c);

D.      An award of reasonable attorneys' fees disbursed and incurred in this action;

E.      Any other and further relief as this Court would deem necessary and proper.


Plaintiff requests a jury trial on all claims so triable.


DATED:  July 21, 2009,

New York, New York.

Respectfully submitted,

Joseph A. Ruta
RUTA & SOULIOS LLP
1500 Broadway - 21st Fl.
New York, NY 10036
(212) 997-4500
jruta@rutasoulios.com

Piero A. Tozzi
53 Franklin Avenue
New Hyde Park, NY 11040
(917) 642-8429
tozzi824@aol.com

Steven H. Aden*
Matthew S. Bowman*
ALLIANCE DEFENSE FUND
801 G Street NW, Suite 509
Washington, DC  20001
(202) 637-4610
saden@telladf.org
mbowman@telladf.org

*Pro hac vice applications pending.

24

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2009, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

> The Mount Sinai Hospital
> One Gustav L. Levy Place
> New York, NY 10029

Service on this party was accomplished by means of service on the corporate party's agent the New York Secretary of state at the following address:

> Department of State
> One Commerce Plaza
> 99 Washington Avenue, 6th Floor
> Albany, NY 12231

Joseph A. Ruta
RUTA & SOULIOS, LLP.
1500 Broadway – 21st Floor
New York, NY 10036

25

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Catherina Lorena Cenzon-DeCarlo, declare the following:

I am the named plaintiff in the above mentioned case. I have read the foregoing Verified Complaint and state under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this __17th__ day of July, 2009

_Catherina Cenzon DeCarlo_
Catherina Lorena Cenzon-DeCarlo

# EXHIBIT A

Complaint_001

**HUMAN RESOURCES POLICY**

**EXCLUSION FROM PATIENT CARE -
EMPLOYEE RIGHTS #15.3**

| Issued:<br>11/01/1970 | Revised:<br>10/23/2002 | Reviewed:<br>07/11/2008 | Page:<br>1 of 1 |
|---|---|---|---|

A. All Medical Center employees have the right not to participate in any aspect of a patient's care or treatment that is perceived to conflict with the employee's cultural values, ethics or religious beliefs. The employee will not be penalized for declining to participate in such care or treatment. But, at no time shall the patient's rights, care or treatment be adversely affected.

B. Implementation:

    1. The aspects of patient care or treatment which an employee may choose not to participate in due to such conflict as noted above include:

        • Abortion/Pregnancy interruption

        • Sterilization procedures

        • Withholding or withdrawing of life-sustaining treatment, including nutrition and hydration.

    2. If an employee wishes to exercise this right and be excused from providing such patient care, s/he must notify the supervisor immediately, in writing, as to the specific aspect of care or treatment which conflicts with the employee's cultural values, ethics or religious beliefs and the reason for this conflict. The notification should be dated and signed by the employee. As part of this notification, an employee may request a transfer to another available position.

    3. The employee is responsible for providing the appropriate patient care until an alternative has been implemented.

    4. The supervisor is responsible for making a decision in response to the employee's request and taking the steps necessary to ensure quality patient care.

    5. This notification should be maintained in the employee's departmental file.

**Note:** This policy replaces "Participation In An Induced Termination of Pregnancy Procedure" issued 11/1/70.

**MOUNT SINAI MEDICAL CENTER**

**Complaint_002**

# EXHIBIT B

**Complaint_003**

**POLICY.**

### ADMINISTRATIVE POLICY

| Distribution: | OPERATING ROOM | No. |
|---|---|---|
| | Non-Elective Surgical Scheduling | Page 1 of 1 |

Original Date of Issue: January 29, 2002

| | | | | | | |
|---|---|---|---|---|---|---|
| Reviewed: | | | | | | |
| Revised: | | | | | | |

Kenneth J. Abrams, MD, MBA
Medical Director

| Patient Population: | |
|---|---|
| Neonate | x |
| Pediatric | x |
| Adolescent | x |
| Adult | x |
| Geriatric | x |

**Purpose:** The goal of this policy is to delineate criteria and allocate resources for patients requiring non-elective surgery.

**Definitions:** For the purposes of resource allocation and prioritization the following stratification was developed:

Category I: Patients requiring immediate surgical intervention for life or limb threatening conditions.
Category II: Patients requiring surgery within 6 hours of identification and notification.
Category III: Patients requiring surgery within 24 hours of identification.
Category IV: Patient's desiring accommodation as add-ons to the schedule as opportunities permit.

A list of examples for surgical procedures which would fit the above defined classifications is attached in appendix I. An emergency case form ("pink slip") has been developed for data collection and stratification (appendix 2).

A. Procedure Requirement:
1. All cases must be prepared to go to the Operating Room prior to booking "Pink Slips".
2. Surgeons must be immediately available for all Category I and Category II patients.
3. All required information must be provided at the time of booking the pink slip.
4. The attending surgeon or chief resident (if they possess independent privileges) will be the responsible party for ensuring booking accuracy and availability.
5. If a surgeon is not available at the time offered for Category I and Category II patients appropriate back-up coverage must be available. If unavailable, the case will be re-classified to the next lower level. Policy violations will be referred to the appropriate departmental and institutional committee for corrective action.

B. Communications:
1. All cases should be phoned into the OR Central Communications Center at 212-241-1990.
2. All information will be reviewed by the Nursing Director for Surgical Admissions and Anesthesiology Clinical Director or their designee's for ensuring appropriate classifications and scheduling.

## THE MOUNT SINAI HOSPITAL, NEW YORK, N.Y.

**Complaint_004**

Case 1:09-cv-03120-RJD-JO   Document 1   Filed 07/21/09   Page 31 of 57 PageID #: 31

C.  Procedure:

1.  All Category I patients will gain immediate access to the next available appropriate OR
2.  Category II patients will gain access to the operating room according to the following:
    a.  Bumping elective cases of the same surgeon.
    b.  Bumping elective cases of the same service.
    c.  Bumping elective cases of another service as required and determined by the Anesthesia Clinical Coordinator and the Nursing Director for Surgical Admissions or their call designees.
3.  Category III patients will be accommodated as the schedule permits.
4.  Category IV patients will be accommodated as the schedule permits or if unable to accommodate before 8pm will be placed on the next available elective schedule.
5.  If time has been offered and the team is not fully present at the agreed upon time, the pink slip case will move to a lower priority and time will be given to the next case.

D.  Monitoring:

1.  All Category I and Category II pink slips will be reviewed monthly by the Perioperative Services Care Center QM/PI committee for appropriateness and timeliness.
2.  Data will be reviewed for identification of policy violations.  Policy violations will be referred to the appropriate departmental and institutional committee for corrective action.

E.  Conflict Resolution:

1.  Should conflicts arise, they will be resolved by the following ascending order:
    a.  Cluster Nurse Manager, Cluster Anesthesiology Coordinator, and Attending surgeon.
    b.  Anesthesiology Clinical Director, Nursing Director of Surgical Admissions, and Attending Surgeons.
    c.  Medical Director for Perioperative Services in conjunction with the above.

# THE MOUNT SINAI HOSPITAL, NEW YORK, N.Y.

**Complaint_005**

# EXHIBIT C

**Complaint_006**

# HHS
# Grant Awards

**Fiscal Year 2007**



January 2009

U.S. Department of Health and Human Services
Office of the Assistant Secretary for Resources and Technology
Office of Grants

For Official Use Only

Complaint_007

## FOREWORD

The Department of Health and Human Services (HHS) is the principal United States (U.S.) government agency for protecting the health of all Americans and providing essential human services to those in need. As one of the largest federal departments, the nation's largest health insurer, and the largest grant-making agency, HHS represents almost a quarter of all federal outlays and administers more grant dollars than all other federal agencies combined. HHS manages an array of grant programs in basic and applied science, public health, income support, child development, and health and social services. Collectively these programs are the Department's primary means to achieve its strategic goals and objectives, described in the FY 2007-2012 HHS Strategic Plan (see Appendix A). The top 50 programs by award amount are identified in Appendix B.

To realize these goals HHS forms partnerships with other federal departments; state, local, and tribal governments; academic institutions; hospitals; the business community; nonprofit and volunteer organizations including faith-based and community-based organizations; and foreign countries and international organizations.  The primary vehicle used in these partnerships is a grant. Grants are financial assistance awards that provide support or stimulation to accomplish a public purpose authorized by federal statute. The primary beneficiary under a grant or cooperative agreement is the public, as opposed to the government. Unique to the HHS Indian Health Service (IHS) are Public Law 93-638 Title V Compact and Title I Contract awards, which are self-determination funding agreements. Compacts are explained further in the IHS portfolio section of this report.

This report is the annual summary of grants HHS awarded during Fiscal Year 2007 (October 1, 2006, through September 30, 2007). The purpose of this report is to provide an overview of the Department's grant programs, which are described in the <u>Catalog of Federal Domestic Assistance (CFDA)</u> (www.cfda.gov).  The source of the grant data is the Tracking Accountability in Government Grants System (TAGGS), the Department's central grant funding information database. Annual grants reports for fiscal years 1997 through 2006 are located at the <u>TAGGS Web site</u> (http://taggs.hhs.gov/AnnualReports.cfm).

This report does not include technical assistance, which provides services instead of money; other assistance in the form of loans, loan guarantees, interest subsidies, or insurance; direct payments of any kind to individuals; or contracts which are required to be entered into and administered under procurement laws and regulations.

By aggregating this grant information into this single report, we hope to provide a more complete and useful understanding of the Department's grant awards.  This report provides grant award information in four sections: Overview, Mandatory Grant Awards, Discretionary Grant Awards and Operating Division (OPDIV) Grant Programs.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES

OFFICE OF THE SECRETARY
Office of the Assistant Secretary for Resources and Technology
Office of Grants

**Complaint_008**

# TABLE OF CONTENTS

Foreword ............................................................................................................................. 2
Table of Contents ............................................................................................................... 3
Notes on Methodology, TAGGS ......................................................................................... 4
Section I. Overview ............................................................................................................. 5
          Organizational Chart ............................................................................................. 7
          Grant Awards By Operating Division ..................................................................... 8
Section II. Mandatory Grant Awards ................................................................................ 10
Section III. Discretionary Grant Awards by Financial Assistance Type ........................... 16
Section IV.  Operating and Staff Division Grant Portfolios
          Administration for Children and Families (ACF) ................................................. 22
          Agency for Healthcare Research and Quality (AHRQ) ....................................... 24
          Administration on Aging (AoA) ........................................................................... 25
          Centers for Disease Control and Prevention (CDC) ........................................... 27
          Centers for Medicare & Medicaid Services (CMS) ............................................ 30
          Food and Drug Administration (FDA) ................................................................. 32
          Health Resources and Services Administration (HRSA) ................................... 34
          Indian Health Service (IHS) ............................................................................... 36
          National Institutes of Health (NIH) ..................................................................... 38
          Office of the Secretary (OS)
                    Office of the Assistant Secretary for Planning and Evaluation (ASPE) ............. 41
                    Office for Public Health and Science (OPHS) ................................................... 43
                    Office of Global health AFFAIRS (OGHA) ........................................................ 46
                    Office of the Assistant Secretary for Preparedness and Response (ASPR) ...... 48
          Substance Abuse and Mental Health Services Administration (SAMHSA) ................... 50
Appendix A. HHS Strategic Goals and Objectives ........................................................... 52
Appendix B. HHS Grant Programs ................................................................................... 53

3

**Complaint_009**

## NOTES ON METHODOLOGY, TAGGS

The grant information contained in this report is from the HHS TAGGS, which contains data generated by the HHS grant-making operating divisions (OPDIVs) and several staff divisions (STAFFDIVs) within the Office of the Secretary (OS). For purposes of this report, OS is considered an OPDIV. Developed and maintained by the Office of Grants (OG), TAGGS is the Department's central repository for all HHS grant award data.

TAGGS currently tracks obligated grant funds of mandatory and discretionary grant programs at the primary transaction level. HHS grant-making OPDIVs submit grant award data to the TAGGS database monthly and annually. Other data submitted to TAGGS include grant recipient demographic (e.g., type of organization, address); funding and grants payments, managed in the Payment Management System; and descriptive program information included in the CFDA Web site. (www.cfda.gov).

The OG maintains a public Web site (http://taggs.hhs.gov), where users are able to view standard TAGGS-generated reports and to query the database. This TAGGS Web site is used by HHS staff, congressional offices, other executive agencies, potential and current grant recipients, and other interested parties for a variety of informational purposes. Some commonly searched TAGGS fields are congressional district, grant program name, recipient (grantee) name, recipient location (state, city, zip, and/or congressional district), awarding OPDIV, transaction amount (or sum of transactions), and fiscal year.

The data in this report reflect all grant awards obligated during FY 2007. The number of grants is a count of awards or projects receiving grant funds. This report also includes funds deobligated in FY2007 that were awarded in prior fiscal years. Deobligations are downward adjustments to previously awarded obligations, representing cost revisions, corrections, or award cancellation. However, any deobligations to FY 2007 Awards occurring in subsequent fiscal years will not be contained in this report.

The data contained in this report may not agree with the FY 2007 budget and accounting records (e.g., Medicaid's accounting adjustments) for several reasons. For examples: 1) the grant award data may include reobligations of prior years' funds in addition to current year funds; 2) the cost of furnishing personnel in lieu of cash are included in the grants data, but are recorded as personnel service costs in accounting records; and 3) jointly funded grants are included in accounting records, but are not included herein unless awards are made by HHS programs.

The dollar amounts set forth in this report for each OPDIV may also differ from the amounts shown in the each OPDIV's Budget Request ("Preliminary Budget Submission to HHS," the "Justification of Budget Estimates to OMB," and the "Justification of Estimates for Appropriations Committees"). Percentages used throughout the report may not add up to exactly 100% due to rounding and other minor adjustments.

**Complaint_010**

# THE FIFTY RECIPIENTS RECEIVING THE GREATEST DISCRETIONARY FUNDING LEVELS

**FY 2007 Top 50 Recipient Dollars: $14,778,804,461**
**FY 2007 Top 50 Recipient Awards: 32,488**

**Highlights**
Universities and colleges represent 39 of the top 50 HHS discretionary grant recipients in FY 2007. The University of California received more HHS discretionary grant funds for more projects than any other recipient. Five state or city health and welfare organizations are in the top 50 HHS discretionary grant recipients. Four hospitals and three research organizations are in the top 50 HHS discretionary grant recipients.

| Top 50 Recipients | | | |
|---|---|---|---|
| **Rank** | **Recipient Name** | **Number of Awards** | **Dollars** |
| 1 | University of California | 4,059 | $1,622,046,750 |
| 2 | Johns Hopkins University | 1,398 | $633,616,608 |
| 3 | University of Texas | 1,555 | $562,761,679 |
| 4 | University of Washington | 1,101 | $491,737,128 |
| 5 | University of Pennsylvania | 1,150 | $461,644,668 |
| 6 | Columbia University | 849 | $451,594,256 |
| 7 | University of Michigan | 1,046 | $416,929,174 |
| 8 | University of Pittsburgh | 1,050 | $407,128,731 |
| 9 | Harvard University | 724 | $398,543,422 |
| 10 | Duke University | 795 | $392,543,710 |
| **Top 10** | | **13,727** | **$5,838,546,126** |
| 11 | Washington University | 864 | $379,972,109 |
| 12 | Yale University | 926 | $368,709,596 |
| 13 | University of North Carolina | 934 | $345,056,909 |
| 14 | Health Research, Inc. | 203 | $329,923,947 |
| 15 | Vanderbilt University | 793 | $310,736,814 |
| 16 | Massachusetts General Hospital | 722 | $308,694,615 |
| 17 | Stanford University | 813 | $306,861,527 |
| 18 | University of Minnesota | 668 | $266,384,947 |
| 19 | Brigham & Women's Hospital | 590 | $264,372,232 |
| 20 | University of Wisconsin | 761 | $262,421,280 |
| 21 | Florida State Department of Health | 48 | $255,905,247 |
| 22 | Emory University | 662 | $240,749,573 |
| 23 | University of Maryland | 588 | $239,030,936 |
| 24 | University of Colorado | 649 | $220,207,215 |
| 25 | Fred Hutchinson Cancer Research Center | 265 | $219,197,005 |
| **Top 25** | | **23,213** | **$10,156,770,078** |

20

**Complaint_011**

## THE FIFTY RECIPIENTS RECEIVING THE GREATEST DISCRETIONARY FUNDING LEVELS (CONT'D.)

| Rank | Recipient Name | Number of Awards | Dollars |
|------|----------------|------------------|---------|
| 26 | Baylor College of Medicine | 511 | $220,055,901 |
| 27 | University of Illinois | 654 | $217,712,422 |
| 28 | University of Alabama | 572 | $213,323,508 |
| 29 | Mount Sinai School Of Medicine | 424 | $211,156,497 |
| 30 | University of Chicago | 478 | $207,943,342 |
| 31 | Texas State Department of Health | 17 | $206,599,547 |
| 32 | California State Department of Health Services | 17 | $204,044,425 |
| 33 | Scripps Research Institute | 438 | $201,842,207 |
| 34 | Los Angeles County Office of Education | 2 | $197,672,944 |
| 35 | Massachusetts Institute of Technology | 297 | $196,422,417 |
| 36 | Mayo Clinic | 422 | $190,211,073 |
| 37 | Northwestern University | 566 | $187,536,239 |
| 38 | University of Iowa | 476 | $185,721,811 |
| 39 | Oregon Health & Science University | 536 | $183,883,184 |
| 40 | Cornell University | 507 | $180,552,054 |
| 41 | New York City Department of Health | 19 | $177,867,378 |
| 42 | University of Rochester | 486 | $177,789,658 |
| 43 | New York City Agency for Child Development | 3 | $176,769,872 |
| 44 | Case Western Reserve University | 471 | $176,244,679 |
| 45 | University of Southern California | 344 | $173,327,209 |
| 46 | Boston University | 420 | $168,533,198 |
| 47 | University of Virginia | 439 | $159,434,786 |
| 48 | Indiana University | 457 | $144,186,801 |
| 49 | Albert Einstein College of Medicine of Yeshiva University | 320 | $134,127,866 |
| 50 | University of Utah | 399 | $129,075,365 |
| Total | | 32,488 | $14,778,804,461 |

21

**Complaint_012**

# EXHIBIT D

**Complaint_013**

U.S. Department of **Health & Human Services**          » www.hhs.gov   » OPHS Home

Office of Public Health and Science
**Office of Population Affairs**

Home > Family Planning > Grantees > Services

## Services

### Title X-Funded Family Planning Grantees, Delegates, and Clinics

The map below provides access to a listing of Title X-funded family planning grantees, delegates, and clinics. Like the Title X family planning network, the map and listing are divided into 10 administrative regions.

To obtain a list of grantees, delegates, and clinics in a given region, simply select its image in the map. States and territories are listed alphabetically within their region. Grantees are listed alphabetically by name within their state or territory. Delegate agencies, where appropriate, are listed alphabetically by name under their sponsoring grantees. Clinics are also listed alphabetically by name under their sponsoring organizations.

A table of states, territories, and their regional assignments is provided below the map. Please consult this table if you are not sure which region includes the information of interest to you. Additionally, to find a clinic in a city/state near you please use our Family Planning Provider Database.



Not shown on map:
Commonwealth of the Northern Mariana Islands,
American Samoa, Guam, Republic of Palau, Federated
States of Micronesia, Republic of the Marshall Islands

| 2007-2008 Directory |
| --- |
| Entire Directory [pdf] [txt] |
| Grantee List [pdf] [html] |
| Introduction [pdf] [html] |

| State or Territory | Region | State or Territory | Region |
| --- | --- | --- | --- |
| Alabama | IV | Montana | VIII |
| Alaska | X | Nebraska | VII |
| American Samoa | IX | Nevada | IX |
| Arizona | IX | New Hampshire | I |
| Arkansas | VI | New Jersey | II |
| California | IX | New Mexico | VI |
| Colorado | VIII | New York | II |
| Commonwealth of the Northern Mariana Islands | IX | North Carolina | IV |
| Connecticut | I | North Dakota | VIII |
| Delaware | III | Ohio | V |

**Complaint_014**

| | | | |
|---|---|---|---|
| District of Columbia | III | Oklahoma | VI |
| Federated States of Micronesia | IX | Oregon | X |
| Florida | IV | Pennsylvania | III |
| Georgia | IV | Puerto Rico | II |
| Guam | IX | Republic of Palau | IX |
| Hawaii | IX | Republic of the Marshall Islands | IX |
| Idaho | X | Rhode Island | I |
| Illinois | V | South Carolina | IV |
| Indiana | V | South Dakota | VIII |
| Iowa | VII | Tennessee | IV |
| Kansas | VII | Texas | VI |
| Kentucky | IV | Utah | VIII |
| Louisiana | VI | Vermont | I |
| Maine | I | Virgin Islands | II |
| Maryland | III | Virginia | III |
| Massachusetts | I | Washington | X |
| Michigan | V | West Virginia | III |
| Minnesota | V | Wisconsin | V |
| Mississippi | IV | Wyoming | VIII |
| Missouri | VII | | |

Download FREE Adobe Acrobat® Reader™ to view PDF files located on this site.

HHS Home | Questions? | Contacting HHS | Site Map | Feedback/Comment on Web site | Accessibility | Freedom of Information Act | Privacy Policy

Disclaimer | The White House | USA.gov | Aids.gov | HealthierUS.gov | Healthfinder.gov

U.S. Department of Health & Human Services · 200 Independence Avenue, S.W. · Washington, D.C. 20201

**Complaint_015**

PPGNNJ Elizabeth
1150 Dickinson St.
Elizabeth, NJ 07201
(908) 351-5384

PPGNNJ Englewood
40 N Van Brunt St.
Englewood, NJ 07631
(201) 894-0966

PPGNNJ Flemington
349 Route 31 South
Bldg. B, Unit 503
Flemington, NJ 08822
(908) 782-7727

PPGNNJ Hackensack
575 Main St.
Hackensack, NJ 07601
(201) 489-1140

PPGNNJ Manville
203 S Main St.
Manville, NJ 08835
(908) 231-9230

PPGNNJ Morristown
196 Speedwell Ave.
Morristown, NJ 07960
(973) 539-1364

PPGNNJ Newton
8 Moran St.
Newton, NJ 07860
(973) 383-5218

PPGNNJ Phillipsburg
402 Coventry Dr.
Phillipsburg, NJ 08865
(908) 454-3000

PPGNNJ Plainfield
123 Park Ave.
Plainfield, NJ 07060
(908) 756-3736

**Delegate**
Planned Parenthood of Metropolitan
New Jersey
151 Washington St.
Newark, NJ 07102
(973) 622-3900

### Clinics

PPMNJ Bograd Paterson
171 to 175 Market St.
Paterson, NJ 07522
(973) 345-3883

PPMNJ Chubb
151 Washington St.
Newark, NJ 07102
(973) 622-3900

PPMNJ Gale East Orange
606 Central Ave.
East Orange, NJ 07018
(973) 674-4343

PPMNJ Ironbound
70 Adams St.
Newark, NJ 07105
(973) 465-7707

PPMNJ Montclair
29 N Fullerton Ave.
Montclair, NJ 07042
(973) 746-7116

PPMNJ Pompton Lakes
750 Hamburg Turnpike
Pompton Lakes, NJ 07442
(973) 839-2363

**Delegate**
Women's Health and Counseling Center
71 Fourth St.
Somerville, NJ 08876
(908) 526-2335

### Clinic

Women's Health and Counseling Center
Somerville
71 Fourth St.
Somerville, NJ 08876
(908) 526-2335

# NEW YORK

## Grantee
**Medical and Health Research
Association of New York City, Inc.
220 Church St.
5th Floor
New York, NY 10013-2988
(646) 619-6525**

## Delegate
Charles B Wang Community Health
268 Canal St.
New York, NY 10013
(212) 966-0228

## Delegate
MIC Women's Health Services
220 Church St.
5th Floor
New York, NY 10013
(646) 619-6405

### Clinics

Fort Greene MIC Center
295 Flatbush Ave. Ext.
3rd Floor
Brooklyn, NY 11201
(646) 619-6405

Jamaica MIC Center
90-04 161st St.
5th Floor
Jamaica, NY 11432
(646) 619-6405

Manhattanville MIC Center
534 West 135th St.
2nd Floor
New York, NY 10031
(646) 619-6405

Tremont MIC Center
4006 Third Ave.
2nd Floor
Bronx, NY 10457
(646) 619-6405

Williamsburg MIC Center
545 Broadway St.
2nd Floor
Brooklyn, NY 11206
(646) 619-6405

## Delegate
Planned Parenthood of New York City
26 Bleecker St.
New York, NY 10012
(212) 274-7268

## REGION II

**Clinic**

Bronx Center PPNYC
349 East 149th St.
2nd Floor
Bronx, NY 10451
(212) 274-7268

**Delegate**

The Door a Center of Alternatives
121 Avenue of the Americas
New York, NY 10013
(212) 941-9090

**Grantee**

**New York State Department of Health
Bureau of Women's Health
Corning Tower, Room 1805
Empire State Plaza
Albany, NY 12237
(518) 474-3368**

**Delegate**

Allegany Co. Health Dept.
7 Court St.
Belmont, NY 14813-1076
(585) 268-9730

**Clinics**

Allegany Co. DOH—Alfred
10 Church St.
Alfred, NY 14802
(585) 268-9730

Allegany Co. DOH—Belmont
7 Court St.
Belmont, NY 14813
(585) 268-9730

Allegany Co. DOH—Wellsville
21 E State St.
Wellsville, NY 14895
(585) 268-9730

**Delegate**

Amsterdam Memorial Health Care System
Women's Health Care
4988 State Hwy. 30
Amsterdam, NY 12010
(518) 841-3613

**Clinic**

Family Health Center
4988 State Hwy. 30
Amsterdam, NY 12010
(518) 841-3613

**Delegate**

Cattaraugus Co. Dept. of Health
1 Leo Moss Ave.
Suite 4010
Olean, NY 14760
(716) 373-8050

**Clinics**

Cattaraugus Co. DOH—Machias
8624 Route 16
P.O. Box 188
Machias, NY 14101
(716) 373-8050

Cattaraugus Co. DOH—Olean
1 Leo Moss Dr.
Suite 4010
Olean, NY 14760
(716) 373-8050

Cattaraugus Co. DOH—Salamanca
69 Iroquois Dr.
Salamanca, NY 14779
(716) 373-8050

**Delegate**

Chautauqua Co. Dept. of Health
7 North Erie St.
Hall R Clothier Bldg.
Mayville, NY 14757
(716) 753-4491

**Clinics**

Chautauqua Co. DOH—Dunkirk
319 Central Ave.
Dunkirk, NY 14048
(716) 753-4491

Chautauqua Co. DOH—Jamestown
110 East 4th St.
Jamestown, NY 14701
(716) 753-4491

Chautauqua Co. DOH—Westfield
189 East Main Rd.
Meyers Professional Bldg.
Westfield, NY 14787
(716) 753-4491

**Delegate**

Community Healthcare Network
79 Madison Ave.
6th Floor
New York, NY 10016
(212) 545-2400

**Clinics**

Community Healthcare Network
Betty Shabazz Health Center
999 Blake Ave.
Brooklyn, NY 11208
(212) 545-2400

Community Healthcare Network
Bronx Center
975 Westchester Ave.
Bronx, NY 10459
(212) 545-2400

Community Healthcare Network
Cabs Center
94-98 Manhattan Ave.
Brooklyn, NY 11206
(212) 545-2400

Community Healthcare Network
Caribbean House Center
1167 Nostrand Ave.
Brooklyn, NY 11225
(212) 545-2400

Community Healthcare Network
Community League Center
1996 Amsterdam Ave.
New York, NY 10032
(212) 545-2400

Community Healthcare Network
Helen B Atkinson Health Center
81 W 115th St.
New York, NY 10026
(212) 545-2400

Community Healthcare Network
Lower East Side Center
92-94 Ludlow St.
New York, NY 10002
(212) 454-2400

Community Healthcare Network
Mobile Unit
c/o 79 Madison Ave.
6th Floor
New York, NY 10016
(212) 454-2400

Community Healthcare Network
Mobile Unit II
c/o 79 Madison Ave.
6th Floor
New York, NY 10016
(212) 454-2400

Community Healthcare Network
Mobile Unit III
c/o 79 Madison Ave.
6th Floor
New York, NY 10016
(212) 454-2400

Community Healthcare Network
Queens Health Center
97-04 Sutphin Ave.
Jamaica, NY 11435
(212) 454-2400

## NEW YORK

Complaint_017

**Delegate**
Coney Island Hospital
2601 Ocean Pkwy.
Brooklyn, NY 11235
(718) 616-4337

Clinics

Coney Island Hospital
2601 Ocean Pkwy.
Brooklyn, NY 11235
(718) 616-4337

Coney Island Hospital Homecrest Pediatric
and Adolescent HC
1601 S Ave.
Brooklyn, NY 11229
(718) 616-4337

Coney Island Hospital Ida G Israel CHC
and Luna Park Child/Adolescent HC
2201 Neptune Ave.
Brooklyn, NY 11224
(718) 616-4337

Coney Island Hospital Mariner's Harbor
Child/Adolescent HC
142 Brabent St.
Staten Island, NY 10303
(718) 616-4337

Coney Island Hospital Sheepshead Bay
Primary HCC
3121 Ocean Ave.
Brooklyn, NY 11229
(718) 616-4337

**Delegate**
East Hill Family Medical
144 Genesee St.
Metcalf Plaza, Suite 500
Auburn, NY 13021
(315) 253-6796

Clinics

East Hill Family Medical—Auburn
144 Genesee St.
Metcalf Plaza
Auburn, NY 13021
(315) 253-6796

East Hill Family Medical—North Rose
5019 Main St.
North Rose, NY 14516
(315) 253-6796

East Hill Family Medical—Waterloo
367 E Main St.
Waterloo, NY 13165
(315) 253-6796

**Delegate**
Erie Co. Dept. of Health
95 Franklin St.
Buffalo, NY 14202
(716) 858-8261

Clinics

Erie Co. DOH—Rath Bldg.
95 Franklin St.
Rath Bldg.
Buffalo, NY 14202
(716) 858-8261

Erie Co. DOH—Hamburg
17 Long Ave.
Hamburg, NY 14075
(716) 858-8261

Erie Co. DOH—Lackawanna
609 Ridge Rd.
Lackawanna, NY 14218
(716) 858-8261

Erie Co. DOH—Dr. Matt Gajewski Human
Service Center
1500 Broadway
Buffalo, NY 14212
(716) 858-8261

Erie Co. DOH ECMC
462 Grider St.
Buffalo, NY 14215
(716) 858-8261

Erie Co. DOH Jesse Nash Health
608 William St.
Buffalo, NY 14206
(716) 858-8261

**Delegate**
Family Life Information Center, Inc.
315 S Manning Blvd.
Albany, NY 12208
(518) 525-1873

Clinics

Family Life Information Center, Inc.
Family Health Center
S Pearl St.
Albany, NY 12202
(518) 525-1873

Family Life Information Center, Inc.
St. Peters Hospital
315 S Manning Blvd.
Albany, NY 12208
(518) 525-1873

**Delegate**
Family Planning Onondaga Co. Health Dept.
Syracuse Model Neighborhood Facility
Civic Center
421 Montgomery St.
9th Floor
Syracuse, NY 13202
(315) 435-3685

Clinics

FP Onondaga Co. DOH—Syracuse Model
Civic Center Clinic
421 Montgomery St.
Basement, Room 30
Syracuse, NY 13202
(315) 435-3685

FP Onondaga Co. DOH—Syracuse Model
Civic Teen Center
421 Montgomery St.
Basement, Room 30
Syracuse, NY 13202
(315) 435-3685

FP Onondaga Co. DOH—Syracuse Model
Dr. William Harris Health Center
301 Slocum Ave.
Syracuse, NY 13204
(315) 435-3685

FP Onondaga Co. DOH—Syracuse Model
North Syracuse
113 E Taft Rd.
North Syracuse, NY 13212
(315) 435-3685

**Delegate**
Ferre Institute, Inc.
124 Front St.
Binghamton, NY 13905
(607) 724-4308

Clinics

Ferre Institute, Inc.
124 Front St.
Binghamton, NY 13905
(607) 724-4308

Ferre Institute, Inc.
1724 Burrstone Rd.
New Hartford, NY 13413
(607) 724-4308

**Delegate**
Gouverneur Healthcare Services
227 Madison St.
New York, NY 10002
(212) 238-7273

Clinic

Gouverneur Healthcare Services
227 Madison St.
New York, NY 10002
(212) 238-7273

**Delegate**
Greene Co. Family Planning
411 Main St. Hgts.
Third Floor
Catskill, NY 12414
(518) 719-3589

**NEW YORK**

## REGION II

**Clinic**

Greene Co. Family Planning
411 Main St.
Catskill, NY 12414
(518) 719-3589

**Delegate**
Harlem Hospital Center
506 Lenox Ave.
Brown Bldg., Room 2049
Manhattan, NY 10037
(212) 939-8262

**Clinic**

Harlem Hospital Center
506 Lenox Ave.
R Brown, Room 2049
New York, NY 10037
(212) 939-8262

**Delegate**
Highland Hospital University of Rochester
FP ACCESS Project
1000 South Ave, P.O. Box 101
Rochester, NY 14620
(585) 279-4865

**Clinics**

Highland Hospital Highland Family Planning
809 E Ridge Rd.
Rochester, NY 14621
(585) 279-4865

Highland Hospital Highland Family Planning
777 S Clinton Ave.
Rochester, NY 14620
(585) 279-4865

**Delegate**
Jacobi Medical Center
1400 Pelham Pkwy. South
Room 1, N 55 Jacobi
Bronx, NY 10461
(718) 918-6005

**Clinic**

Jacobi Medical Center Women's Health
Center
1400 Pelham Pkwy. South
Room 1, N 55 Jacobi
Bronx, NY 10461
(718) 918-6005

**Delegate**
Jacobus Center for Reproductive Health
Cortland Co. Dept. of Health
60 Central Ave.
Cortland, NY 13045
(607) 753-5026

**Clinic**

Jacobus Center—Cortland Co. DOH
Center for Reproductive Health
60 Central Ave.
Cortland, NY 13045
(607) 753-5026

**Delegate**
Kaleida Health
1001 Humboldt Pkwy.
Buffalo, NY 14208
(716) 887-8273

**Clinics**

Kaleida Health Deaconess Center
1001 Humboldt Pkwy.
Buffalo, NY 14208
(716) 887-8273

Kaleida Health Evergreen Health Center
206 S Elmwood Ave.
Buffalo, NY 14201
(716) 887-8273

**Delegate**
Kings Co. Hospital Center
451 Clarkson Ave.
Brooklyn, NY 11203
(718) 245-3495

**Clinic**

Kings Co. Hospital Center
451 Clarkson Ave.
B Bldg. 4th Floor
Brooklyn, NY 11203
(718) 245-3495

**Delegate**
Livingston Co. Dept. of Health
2 Murray Hill Dr.
Mt. Morris, NY 14510
(585) 243-7540

**Clinics**

Livingston Co. DOH Women's Health
Center —Avon
470 Collins St.
Avon, NY 14414
(585) 243-7540

Livingston Co. DOH Women's Health
Center—Dansville
3 Chestnut Ave.
Dansville, NY 14437
(585) 243-7540

Livingston Co. DOH Women's Health
Center—Mt. Morris
2 Murray Hill Dr.
Mt. Morris, NY 14510
(585) 243-7540

**Delegate**
Metropolitan Hospital Center
1901 First Ave.
Room 7D7
New York, NY 10029
(212) 423-8811

**Clinics**

Metropolitan Hospital Center Family
Planning Clinic
1901 First Ave.
7th Floor
New York, NY 10029
(212) 423-8811

Metropolitan Hospital Center Youth
Health Services
1901 First Ave.
7th Floor
New York, NY 10029
(212) 423-8811

**Delegate**
Mt. Sinai Hospital
320 East 94th St.
New York, NY 10128
(212) 423-2900

**Clinic**

Mt. Sinai Hospital Adolescent Health Center
320 East 94th St.
New York, NY 10128
(212) 423-2900

**Delegate**
Nassau Health Care Corp.
2201 Hempstead Turnpike
Room 107
East Meadow, NY 11050
(516) 572-5025

**Clinics**

Elmont Health Center
161 Hempstead Turnpike
Elmont, NY 11003
(516) 572-5025

Freeport Roosevelt Health Center
460 N Main St.
Freeport, NY 11520
(516) 572-5025

Hempstead Community Health Center
100 Main St.
Hempstead, NY 11550
(516) 572-5025

Inwood Lawrence Health Center
270 Lawrence Ave.
Lawrence, NY 11559
(516) 572-5025

## NEW YORK

Complaint_019

# EXHIBIT E



HRSA | U.S. Department of Health and Human Services
Health Resources and Services Administration

Home
Questions?
Order Publications

SEARCH

GRANTS | FIND HELP | SERVICE DELIVERY | DATA | HEALTH SYSTEM CONCERNS | ABOUT HRSA

## The HIV/AIDS Program Home: Caring for the Underserved

**HIV/AIDS Home**
Ryan White HIV/AIDS Program
News and Events
Provide HIV Care
Program Data
Manage Your Grant
Global HIV/AIDS Program

**Dental Reimbursement Program Grant Recipients, FY 2007**

**Alabama**

**University of Alabama**
School of Dentistry
Dr. Jeffery Hill
SDB 524-C
Birmingham, AL 35294
205-934-6462 (voice)
205-975-2613 (fax)

**California**

**Highland General Hospital**
**Departments of Dental/Oral Surgery**
Dr. Anthony Mock
1411 East 31st Street
Department of Dental/Oral Surgery
Oakland, CA 94602
510-437-4101 (voice)
510-437-5128 (fax)

**University of California, Los Angeles**
**School of Dentistry**
Dr. No-Hee Park
10833 Le Conte Avenue
Los Angeles, CA 90095
310-206-6063 (voice)
310-794-7734 (fax)

**University of California, San Francisco**
**School of Dentistry**
Dr. Joel White
707 Parnassus Ave., D-3248
San Francisco, CA 94143
415-476-0918 (voice)
415-476-0858 (fax)

**University of Southern California**
**School of Dentistry**
Dr. Roseann Mulligan
925 West 34th Street, DEN 4338
Los Angeles, CA 90089
213-740-1084 (voice)
213-740-1581 (fax)

**University of the Pacific**
**Dugoni School of Dentistry**
Dr. Richard Fredekind
2155 Webster Street
San Francisco, CA 94115
415-929-6604 (voice)
415-929-6654 (fax)

**Connecticut**

**Yale-New Haven Hospital**
**Community Health, Dental Department**
Dr. Brian Singletary
20 York Street
Dental Department, T231
New Haven, CT 06510
203-688-2465 (voice)
203-688-4461 (fax)

**District of Columbia**

**Howard University College of Dentistry**
**Department of Dental Hygiene**
Dr. Leo Rouse
600 W Street NW Suite 521
Washington, DC 20059
202-806-0440 (voice)
202-806-0354 (fax)

**Complaint_021**

718-780-4630 (voice)
718-780-2981 (fax)

**Long Island Jewish Medical Center**
Dr. Ronald Burakoff
270-05 76th Avenue
New Hyde Park, NY 11040
718-470-7111 (voice)
718-347-4118 (fax)

**Lutheran Medical Center**
Dr. Neal Demby
150 55th Streeet
Brooklyn, NY 11220
718-630-7177 (voice)
718-492-5090 (fax)

**Montefiore Medical Center**
Dr. Richard Kraut
3322 Rochambeau Avenue, 2nd Floor
Bronx, NY 10467
718-920-4984 (voice)
718-515-5419 (fax)

**New York Hospital Queens**
Dr. Burton Wasserman
56-45 Main Street
Flushing, NY 11355
718-670-1140 (voice)
718-670-1220 (fax)

**North Central Bronx Hospital**
**Department of Dentistry**
Dr. Victor Badner
3424 Kossuth Avenue
Bronx, NY 10475
718-918-3418 (voice)
718-918-6147 (fax)

**North Shore University Hospital**
**Department of Dental Medicine**
Dr. Frederic Kunken
300 Community Drive
Manhasset, NY 11030
516-562-4525 (voice)
516-562-2470 (fax)

**Saint Vincent Catholic Medical Centers**
Dr. Vito Cardo
152-11 89th Avenue, Dental Medicine, 2nd floor
Jamaica, NY 11432
718-558-6958 (voice)
718-558-7029 (fax)

**St. Barnabas Hospital**
Dr. Dara Rosenberg
183rd Street & Third Avenue
Bronx, NY 10457
718-960-6498 (voice)
718-960-3663 (fax)

**St. Lukes-Roosevelt Hospital**
Dr. Karl Hoffman
1111 Amsterdam Avenue, Stuy 7
New York, NY 10025
212-523-6050 (voice)
212-523-6023 (fax)

**Strong Memorial Hospital, Department of Dentistry**
Dr. Cyril Meyerowitz
601 Elmwood Ave
Box 705
Rochester, NY 14642
585-275-5688 (voice)
585-256-3154 (fax)

**The Brooklyn Hospital Center**
Dr. Harry Dym
121 Dekalb Ave
Brooklyn, NY 11201
718-250-8258 (voice)
718-250-6431 (fax)

**The Mount Sinai Hospital**
Dr. John Pfail

**Woodhull Medical Center**
Dr. Peter Sherman
760 Broadway
Brooklyn, NY 11206
718-963-8312 (voice)
718-630-3244 (fax)

**Wyckoff Heights Medical Center**
Dr. Miriam Bonet
374 Stockholm Street
Brooklyn, NY 11237
718-963-7174 (voice)
718-963-7653 (fax)

**Ohio**

**Case Western Reserve University**
Dr. Fady Faddoul
10900 Euclid Avenue
Cleveland, OH 11406
216-368-3290 (voice)
216-368-3204 (fax)

**Oregon**

**Oregon Health & Science University**
Dr. Robert Johnson
School of Dentistry
611 SW Campus Drive
Portland, OR 97239
503-494-5850 (voice)
503-494-8839 (fax)

**Pennsylvania**

**Lehigh Valley Hospital, Dental Department**
Ms. Patricia Atno
17th & Chew St. P.O. Box 7017
Allentown, PA 18105
610-969-4839 (voice)
610-969-3084 (fax)

**Temple University**
Maurice H. Kornberg School of Dentistry
Dr. Laurie MacPhail
3223 North Broad St.
Philadelphia, PA 19140
215-707-7685 (voice)
2157075-719 (fax)

**University of Pennsylvania**
**School of Dental Medicine**
Dr. Thomas Sollecito
Robert Schattner Center
240 S. 40th Street, Suite #250
Philadelphia, PA 19104
215-898-5344 (voice)
215-898-3139 (fax)

**York Hospital Dental Center**
Dr. Maria Sequeria
1001 South George Steet
York, PA 17405
717-851-2067 (voice)
717-851-3565 (fax)

**Puerto Rico**

**University of Puerto Rico**
**School of Dentistry GPR Program**
Dr. Yilda Rivera
Medical Sciences Campus
School of Dentistry Office A 155
San Juan, PR 00935
787-758-2525 (voice)

**Complaint_023**

**HRSA** U.S. Department of Health and Human Services
Health Resources and Services Administration

Home
Questions?
Order Publications

SEARCH

GRANTS   FIND HELP   SERVICE DELIVERY   DATA   HEALTH SYSTEM CONCERNS   ABOUT HRSA

## The HIV/AIDS Program: Caring for the Underserved

HIV/AIDS Home
Ryan White HIV/AIDS Program
News and Events
Provide HIV Care
Program Data
Manage Your Grant
Global HIV/AIDS Program

### Part F: Dental Reimbursement Programs 2007 Award Amounts

| DENTAL REIMBURSEMENT PROGRAM | STATE | 2007 AWARD AMOUNT |
|---|---|---|
| University of Alabama, School of Dentistry | AL | $20,971.22 |
| Highland General Hospital, Departments of Dental/Oral Surgery | CA | $371,916.58 |
| University of California, Los Angeles, School of Dentistry | CA | $66,387.79 |
| University of California, San Francisco, School of Dentistry | CA | $22,734.57 |
| University of Southern California, School of Dentistry | CA | $281,969.93 |
| University of the Pacific, Dugoni School of Dentistry | CA | $450,019.39 |
| Yale-New Haven Hospital, Community Health, Dental Department | CT | $1,937.92 |
| Howard University College of Dentistry, Department of Dental Hygiene | DC | $42,026.71 |
| Howard University, College of Dentistry | DC | $82,859.93 |
| Washington Hospital Center, Department of Oral & Maxillofacial Surgery | DC | $31,658.49 |
| University of Miami, Division of Oral & Maxillofacial Surgery & General Dentistry | FL | $1,049,002.37 |
| Medical College of Georgia, School of Dentistry | GA | $120,745.93 |
| University of Iowa | IO | $18,924.14 |
| University of Illinois at Chicago, College of Dentistry | IL | $276,552.25 |
| University of Kentucky, College of Dentistry | KY | $57,943.44 |
| University of Louisville, School of Dentistry | KY | $423,594.38 |
| Boston Medical Center, General Practice Residency Program | MA | $185,828.67 |
| Boston University, Goldman School of Dental Medicine | MA | $420,610.24 |
| Children's Hospital, Department of Dentistry | MA | $2,059.92 |
| Harvard Dental Center | MA | $9,038.69 |
| Tufts University, School of Dental Medicine | MA | $125,861.42 |
| University of Detroit Mercy, School of Dentistry | MI | $161,552.67 |
| Hennepin County Medical Center, GPR Program | MN | $72,488.09 |
| Truman Medical Center Lakewood | MO | $982.81 |
| University of Mississippi Medical Center, School of Dentistry | MS | $7,587.15 |
| UNC Hospital Dental Clinic | NC | $3,162.32 |
| University of North Carolina, School of Dentistry | NC | $4,139.51 |
| University of Nebraska | NE | $9,887.46 |
| Hackensack University Medical Center | NJ | $13,568.27 |
| New Jersey Dental School, Special Services Dental Clinic | NJ | $167,861.65 |
| St. Joseph Hospital and Medical Center | NJ | $12,117.93 |
| Bronx-Lebanon Hospital | NY | $442,624.06 |
| Columbia University, College of Dental Medicine | NY | $90,019.69 |
| Erie County Medical Center, Department of Dentistry | NY | $19,215.49 |
| Harlem Hospital Center | NY | $19,258.83 |

| | | |
|---|---|---|
| Jacobi Medical Center | NY | $826,292.18 |
| Jamaica Hospital Medical Center | NY | $197,072.55 |
| Kings County Hospital Center | NY | $105,604.54 |
| Long Island College Hospital | NY | $2,438.76 |
| Long Island Jewish Medical Center | NY | $11,259.94 |
| Lutheran Medical Center | NY | $676,243.85 |
| Montefiore Medical Center | NY | $312,170.86 |
| New York Hospital Queens | NY | $76,696.62 |
| North Central Bronx Hospital, Department of Dentistry | NY | $175,748.18 |
| North Shore University Hospital, Department of Dental Medicine | NY | $7,384.49 |
| Saint Vincent Catholic Medical Centers | NY | $150,897.10 |
| St. Barnabas Hospital | NY | $111,566.79 |
| St. Lukes-Roosevelt Hospital | NY | $394,951.33 |
| Strong Memorial Hospital, Department of Dentistry | NY | $16,120.19 |
| The Brooklyn Hospital Center | NY | $56,887.19 |
| The Mount Sinai Hospital | NY | $91,760.17 |
| Westchester County Medical Center | NY | $29,560.44 |
| Woodhull Medical Center | NY | $252,274.65 |
| Wyckoff Heights Medical Center | NY | $15,916.73 |
| Case Western Reserve University | OH | $4,761.53 |
| Oregon Health & Science University | OR | $164,832.57 |
| Lehigh Valley Hospital, Dental Department | PA | $22,597.32 |
| Temple University, Maurice H Kornberg School of Dentistry | PA | $95,265.20 |
| University of Pennsylvania, School of Dental Medicine | PA | $172,090.65 |
| York Hospital Dental Center | PA | $4,773.17 |
| University of Puerto Rico, School of Dentistry GPR Program | PR | $1,964.81 |
| Baylor College of Dentistry, Caruth School of Dental Hygiene, TX A&M University Health Science Center | TX | $319.04 |
| Baylor College of Dentistry, TX A&M University Health Science Center | TX | $111,064.75 |
| University of Utah, School of Medicine GPR Program | UT | $12,017.21 |
| University of Washington, School of Dentistry | WA | $10,752.28 |

| COMMUNITY-BASED DENTAL PARTNERSHIP PROGRAM | STATE | 2007 AWARD AMOUNT |
|---|---|---|
| Loma Linda University, School of Dentistry | CA | $308,112 |
| University of Colorado Health Sciences Center, School of Dentistry | CO | $291,424 |
| NOVA Southeastern University, College of Dental Medicine (Program in upstate New York and Florida) | FL | $184,747 |
| University of Illinois, School of Dentistry | IL | $286,060 |
| University of Louisville, School of Dentistry | KY | $359,572 |
| Louisiana State University Health Sciences Center, School of Dentistry | LA | $194,801 |
| Boston University, Goldman School of Dental Medicine | MA | $300,000 |
| University of Mississippi Medical Center, School of Dentistry | MS | $284,032 |
| University of Medicine and Dentistry of New Jersey, New Jersey Dental School | NJ | $353,693 |

**Complaint_025**

Case 1:09-cv-03120-RJD-JO   Document 1   Filed 07/21/09   Page 52 of 57 PageID #: 52

**HRSA** · U.S. Department of Health and Human Services · Health Resources and Services Administration

Home | Questions? | Order Publications

SEARCH

GRANTS | FIND HELP | SERVICE DELIVERY | DATA | HEALTH SYSTEM CONCERNS | ABOUT HRSA

## The HIV/AIDS Program: Caring for the Underserved

- HIV/AIDS Home
- Ryan White HIV/AIDS Program
- News and Events
- Provide HIV Care
- Program Data
- Manage Your Grant
- Global HIV/AIDS Program

### Part F: Dental Reimbursement Programs 2008 Award Amounts

| Dental Reimbursement Program | State | 2008 Award Amount |
|---|---|---|
| University of Alabama, School of Dentistry | AL | $26,339.66 |
| Highland General Hospital, Departments of Dental/Oral Surgery | CA | $271,080.18 |
| University of California, Los Angeles, School of Dentistry | CA | $165,823.34 |
| University of California, San Francisco, School of Dentistry | CA | $25,021.56 |
| University of Southern California, School of Dentistry | CA | $306,056.12 |
| University of the Pacific, Dugoni School of Dentistry | CA | $354,399.47 |
| Howard University College of Dentistry, Department of Dental Hygiene | DC | $32,111.50 |
| Howard University, College of Dentistry | DC | $50,305.28 |
| Washington Hospital Center, Department of Oral & Maxillofacial Surgery | DC | $44,461.75 |
| University of Miami, Division of Oral & Maxillofacial Surgery & General Dentistry | FL | $826,571.24 |
| Medical College of Georgia, School of Dentistry | GA | $86,980.98 |
| University of Illinois at Chicago, College of Dentistry | IL | $182,562.56 |
| University of Kentucky, College of Dentistry | KY | $62,789.56 |
| University of Louisville, School of Dentistry | KY | $359,520.57 |
| Louisiana State University, School of Dentistry | LA | $64,097.29 |
| Boston Medical Center, General Practice Residency Program | MA | $183,177.63 |
| Boston University, Goldman School of Dental Medicine | MA | $377,180.31 |
| Children's Hospital, Department of Dentistry | MA | $861.31 |
| Harvard Dental Center | MA | $454.72 |
| Tufts University, School of Dental Medicine | MA | $60,150.57 |
| University of Detroit Mercy, School of Dentistry | MI | $118,417.84 |
| Hennepin County Medical Center, GPR Program | MN | $60,003.39 |
| Truman Medical Center Lakewood | MO | $411.09 |
| University of Mississippi Medical Center, School of Dentistry | MS | $3,725.76 |
| UNC Hospital Dental Clinic | NC | $10,026.08 |
| University of North Carolina, School of Dentistry | NC | $4,737.36 |
| University of Nebraska | NE | $14,539.37 |
| Hackensack University Medical Center | NJ | $8,641.82 |
| New Jersey Dental School, Special Services Dental Clinic | NJ | $153,358.80 |
| St. Joseph Hospital and Medical Center, Comprehensive Care Center for HIV Services | NJ | $11,297.43 |
| Bronx-Lebanon Hospital | NY | $484,976.40 |
| Caritas Health Care Planning, Inc. | NY | $54,961.26 |
| Columbia University, College of Dental Medicine | NY | $148,484.29 |
| Erie County Medical Center, Department of Dentistry | NY | $18,783.57 |

Complaint_026

| | | |
|---|---|---|
| Harlem Hospital Center | NY | $22,481.96 |
| Jacobi Medical Center | NY | $805,069.03 |
| Jamaica Hospital Medical Center | NY | $185,682.59 |
| Kings County Hospital Center | NY | $73,131.14 |
| Long Island College Hospital | NY | $1,938.72 |
| Long Island Jewish Medical Center | NY | $11,857.78 |
| Lutheran Medical Center | NY | $711,986.51 |
| Montefiore Medical Center | NY | $215,362.21 |
| New York Hospital Queens | NY | $74,252.88 |
| North Central Bronx Hospital, Department of Dentistry | NY | $110,083.55 |
| North Shore University Hospital, Department of Dental Medicine | NY | $2,268.77 |
| St. Barnabas Hospital | NY | $130,857.79 |
| St. Lukes-Roosevelt Hospital, Center for Comprehensive Care | NY | $564,194.18 |
| Strong Memorial Hospital, Department of Dentistry | NY | $19,324.87 |
| The Brooklyn Hospital Center | NY | $51,305.46 |
| The Mount Sinai Hospital | NY | $84,953.25 |
| Westchester County Medical Center | NY | $74,593.32 |
| Woodhull Medical Center, Department of Dentistry and Maxillofacial Surgery | NY | $193,234.53 |
| Wyckoff Heights Medical Center | NY | $16,440.00 |
| Case Western Reserve University | OH | $3,663.07 |
| Oregon Health & Science University | OR | $151,050.55 |
| Lehigh Valley Hospital, Dental Department | PA | $15,468.90 |
| Temple University, Maurice H Kornberg School of Dentistry | PA | $79,318.56 |
| University of Pennsylvania, School of Dental Medicine | PA | $168,238.26 |
| York Hospital Dental Center | PA | $3,537.01 |
| University of Puerto Rico, School of Dentistry, GPR Program | PR | $52.99 |
| Baylor College of Dentistry, Caruth School of Dental Hygiene, TX A&M University Health Science Center | TX | $400.00 |
| Baylor College of Dentistry, TX A&M University Health Science Center | TX | $110,490.48 |
| University of Utah, School of Medicine GPR Program | UT | $7,610.47 |
| University of Washington, School of Dentistry | WA | $12,453.11 |

| Community-Based Dental Partnership Program | State | 2008 Award Amount |
|---|---|---|
| Loma Linda University, School of Dentistry | CA | $320,000 |
| University of Colorado Health Sciences Center | CO | $310,210 |
| NOVA Southeastern University, Inc. | FL | $234,7347 |
| University of Illinois at Chicago | IL | $286,060 |
| University of Louisville Research Foundation | KY | $359,568 |
| Louisiana State University Health Sciences Center, School of Dentistry | LA | $373,192 |
| Trustees of Boston University | MA | $300,000 |
| University of Mississippi Medical Center, School of Dentistry | MS | $284,032 |
| University of Medicine and Dentistry of New Jersey | NJ | $389,948 |
| Lutheran Medical Center | NY | $244,604 |

# EXHIBIT F

Complaint_028

U.S. Department of Health & Human Services                    www.hhs.gov

**TAGGS** - Tracking Accountability in Government Grants System

HOME    AWARD SEARCH    RECIPIENT SEARCH    ADVANCED SEARCH    REPORTS    ANNUAL REPORT    HELP & STATUS    FEEDBACK    SITE INDEX

Search Awards
▸ Advanced Search

Search Abstracts
▸ By Keyword
▸ Advanced Search

## TAGGS Advanced Search Results

Results 1 to 17 of 17 matches.                                    Save To Excel

Page 1 of 1                                                              1

| Fiscal Year | OPDIV | Program Office | Grantee Name | Grantee Address | City | State | Award Title | CFDA Program Name | Sum of Actions |
|---|---|---|---|---|---|---|---|---|---|
| 2009 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | CENTER FOR ACHIEVING AND SUSTAINING IMPROVED HEALTH IN HARLEM | Minority Health and Health Disparities Research | $ 1,545,416 |
| 2009 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | COLLABORATIONS FOR HEALTH IMPROVEMENT IN EAST HARLEM - PROJECT HEED | Minority Health and Health Disparities Research | $ 564,605 |
| 2009 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | INTERNATIONAL EXCHANGE PROGRAM FOR MINORITY STUDENTS | Minority Health and Health Disparities Research | $ 294,491 |
| 2008 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | CENTER FOR ACHIEVING AND SUSTAINING IMPROVED HEALTH IN HARLEM | Minority Health and Health Disparities Research | $ 1,513,088 |
| 2008 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | COLLABORATIONS FOR HEALTH IMPROVEMENT IN EAST HARLEM - PROJECT HEED | Minority Health and Health Disparities Research | $ 617,831 |
| 2008 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | INTERNATIONAL EXCHANGE PROGRAM FOR MINORITY STUDENTS | Minority Biomedical Research Support | $ 241,864 |
| 2007 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | CENTER FOR ACHIEVING AND SUSTAINING IMPROVED HEALTH IN HARLEM | Minority Health and Health Disparities Research | $ 1,593,861 |
| 2007 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | COLLABORATIONS FOR HEALTH IMPROVEMENT IN EAST HARLEM - PROJECT HEED | Minority Health and Health Disparities Research | $ 510,664 |
| 2007 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | INTERNATIONAL EXCHANGE PROGRAM FOR MINORITY STUDENTS | Minority Health and Health Disparities Research | $ 146,394 |
| 2006 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | CENTER FOR ACHIEVING AND SUSTAINING IMPROVED HEALTH IN HARLEM | Minority Health and Health Disparities Research | $ 1,207,068 |
| 2006 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | COLLABORATIONS FOR HEALTH IMPROVEMENT IN EAST HARLEM - PROJECT HEED | Minority Health and Health Disparities Research | $ 548,551 |
| 2006 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | INTERNATIONAL EXCHANGE PROGRAM FOR MINORITY STUDENTS | Minority Health and Health Disparities Research | $ 241,864 |
| 2005 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | CENTER FOR ACHIEVING AND SUSTAINING IMPROVED HEALTH IN HARLEM | Minority Health and Health Disparities Research | $ 1,208,054 |
| 2005 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | COLLABORATIONS FOR HEALTH IMPROVEMENT IN EAST HARLEM - PROJECT HEED | Minority Health and Health Disparities Research | $ 570,043 |
| 2004 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | CENTER FOR ACHIEVING AND SUSTAINING IMPROVED HEALTH IN HARLEM | Minority Biomedical Research Support | $ 1,203,162 |
| 2003 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | CENTER FOR ACHIEVING AND SUSTAINING IMPROVED HEALTH IN HARLEM | Minority Biomedical Research Support | $ 1,165,751 |
| 2002 | NIH | NCMHD | MT SINAI SCHOOL OF MEDICINE | 1 GUSTAVE L LEVY PL, BOX 3500 | NEW YORK-NEW YORK | NY | CENTER FOR ACHIEVING AND SUSTAINING IMPROVED HEALTH IN HARLEM | Minority Biomedical Research Support | $ 1,166,741 |

Complaint_029

# EXHIBIT G

Complaint_030



Complaint_031