UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CATHERINA LORENA CENZON-DECARLO,

                            Plaintiff,

                                                          **MEMORANDUM & ORDER**

    -against-

                                                           09 CV 3120 (RJD)

THE MOUNT SINAI HOSPITAL,

                            Defendant.
-------------------------------------------------------------------X
DEARIE, Chief Judge.

Plaintiff, a nurse employed by defendant The Mount Sinai Hospital ("Mount Sinai"), brings this action for damages and declaratory and injunctive relief under 42 U.S.C. § 300a-7(c) (the "Church Amendment"). Defendant moves for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is granted.

## Background

Plaintiff has worked as an operating room nurse at Mount Sinai since August of 2004. In addition to her full-time work week, she typically has been assigned an extra eight or nine "on-call" work shifts per month on weekends and holidays.[1] When hired, plaintiff made her objection to participating in abortion procedures known and filled out a form given to her by the hospital to register her religious objection. According to plaintiff, abortion procedures at Mount Sinai are generally scheduled for Saturday mornings.

Plaintiff alleges that on Sunday, May 24, 2009, while working an on-call shift, she was forced to assist in an abortion procedure against her known religious objection. She complained

---

[1] Qualified nurses volunteer for these additional shifts, for additional pay, as a benefit of their employment, but in the absence of a sufficient number of volunteers, the hospital assigns the shifts.

to her supervisors and filed a grievance under her union's collective bargaining agreement. She alleges that as a consequence of and in retaliation for her complaints and grievance, she was assigned only one on-call shift for the month of August.

Plaintiff further alleges that on July 16, 2009, her attorney accompanied her to a scheduled meeting to discuss her grievance, but the union refused to conduct the meeting with her attorney present. Shortly after the cancelled meeting, her manager told her that she would not be assigned to work on-call shifts in September unless she signed a statement that she would assist in abortions designated emergencies by the hospital. Plaintiff refused to sign.

Plaintiff commenced this action on July 21, 2009, claiming that Mount Sinai's actions constitute prohibited discrimination under the Church Amendment, 42 U.S.C. § 300a-7(c). She seeks a declaratory judgment that Mount Sinai has violated and continues to violate the Church Amendment and her rights thereunder. In addition, she seeks an injunction (1) prohibiting Mount Sinai from receiving any further qualifying federal funds under 42 U.S.C. § 300a-7(c) until it demonstrates compliance with the Church Amendment's non-discrimination provisions; (2) requiring Mount Sinai to disgorge qualifying federal funds it received under 42 U.S.C. § 300a-7(c); and (3) ordering Mount Sinai to restore plaintiff's access to on-call surgical team assignments and to refrain from forcing plaintiff and other health care personnel to participate in abortion procedures against their objections. Finally, plaintiff asks for damages from Mount Sinai for violating her rights under the Church Amendment.

The Church Amendment provides:

> (c) Discrimination prohibition
>
> (1) No entity which receives a grant, contract, loan, or loan

guarantee under the Public Health Service Act [42 U.S.C.A. § 201 et seq.], the Community Mental Health Centers Act [42 U.S.C.A. § 2689 et seq.], or the Developmental Disabilities Services and Facilities Construction Act [42 U.S.C.A. § 6000 et seq.] after June 18, 1973, may--

> (A) discriminate in the employment, promotion, or termination of employment of any physician or other health care personnel, or
>
> (B) discriminate in the extension of staff or other privileges to any physician or other health care personnel,

because he performed or assisted in the performance of a lawful sterilization procedure or abortion, because he refused to perform or assist in the performance of such a procedure or abortion on the grounds that his performance or assistance in the performance of the procedure or abortion would be contrary to his religious beliefs or moral convictions, or because of his religious beliefs or moral convictions respecting sterilization procedures or abortions.

(2) No entity which receives after July 12, 1974, a grant or contract for biomedical or behavioral research under any program administered by the Secretary of Health and Human Services may--

> (A) discriminate in the employment, promotion, or termination of employment of any physician or other health care personnel, or
>
> (B) discriminate in the extension of staff or other privileges to any physician or other health care personnel,

because he performed or assisted in the performance of any lawful health service or research activity, because he refused to perform or assist in the performance of any such service or activity on the grounds that his performance or assistance in the performance of such service or activity would be contrary to his religious beliefs or moral convictions, or because of his religious beliefs or moral convictions respecting any such service or activity.

42 U.S.C.A. § 300a-7(c). The parties agree that the Church Amendment contains no express

private right of action to seek relief for alleged violations of the statute. Defendant moves to dismiss on the ground that no implied private right of action exists.

## Discussion

In <u>Cort v. Ash</u>, 422 U.S. 66 (1975), the Supreme Court set forth four factors to be considered in determining whether an implied right of action exists under a federal statute: (1) whether plaintiff is one of the class members intended to benefit from the statute, (2) whether there is any indication, explicit or implicit, of legislative intent to create or deny a right of action, (3) whether a right of action is "consistent with the underlying purposes of the legislative scheme," and (4) whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States." <u>Id.</u> at 78. Since <u>Cort</u>, however, the Supreme Court has emphasized that congressional intent is the primary determinant. Beginning in <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560 (1979), the Court effectively recast <u>Cort</u>'s four-factor test:

> It is true that in <u>Cort v. Ash</u>, the Court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in <u>Cort</u>—the language and focus of the statute, its legislative history, and its purpose, <u>see</u> 422 U.S. at 78—are ones traditionally relied upon in determining legislative intent.

<u>Id.</u> at 575-76. In <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11 (1979), the Court reiterated that "[t]he dispositive question remains whether Congress intended to create any such remedy." <u>Id.</u> at 24; <u>see also</u> <u>Thompson v. Thompson</u>, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) (<u>Cort</u>'s four factor test was effectively overruled in <u>Touche Ross</u> and <u>Transamerica</u>

4

by the Court's conversion of "one of its four factors (congressional intent) into *the determinative factor*, with the other three merely indicative of its presence or absence.") (emphasis in original). As recognized by the Second Circuit:

> Although Cort envisioned these factors as a four-pronged test for whether it was appropriate for a court to create common law remedies for statutory violations, the Supreme Court has since refocused (perhaps "shifted" would be a more apt description) the test by emphasizing the centrality of the second factor—congressional intent. The remaining Cort factors now enter into the analysis, if at all, only as proxies for legislative intent.

Health Care Plan, Inc. v. Aetna Life Ins. Co., 966 F.2d 738, 740 (2d Cir. 1992) (internal citations omitted). Further, "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." Northwest Airlines, Inc. v. Transport Workers Union of America, 451 U.S. 77, 94 (1981). Accordingly, this Court must examine whether Congress intended to create a private remedy. If not, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001).

The Supreme Court has held that "'[t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative' where a 'statute by its terms grants no private rights to any identifiable class.'" Gonzaga University v. Doe, 536 U.S. 273, 283-84 (2002) (quoting Touche Ross, 442 U.S. at 576). Moreover, even if a statute creates a private right, a private remedy cannot necessarily be implied. The private remedy inquiry centers on congressional intent; thus, "a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'"

5

Gonzaga, 536 U.S. at 284 (quoting Sandoval, 532 U.S. at 286) (emphasis in Gonzaga).

Plaintiff contends that Gonzaga implicitly supports finding a private remedy in the Church Amendment. In Gonzaga, the Court considered whether a student could sue under 42 U.S.C. § 1983 to enforce the provisions of the Family Educational Rights and Privacy Act of 1974 ("FERPA"), a statute prohibiting federal funding of educational institutions that allow the unauthorized release of education records. Plaintiff emphasizes that instead of rejecting the existence of a cause of action under FERPA on the ground that the enforcement mechanism for such legislation is the termination of funding, the Court analyzed the text and structure of the statute—examining whether the statute included rights-creating language, had an individual or aggregate focus, and provided an enforcement mechanism—to determine whether Congress intended to create an enforceable private right in the first instance. See Gonzaga, 536 U.S. at 287-290. Based on the lack of any rights-creating language in the statute, the statute's focus on institutional disclosure policy rather than individual instances of disclosure, and the statute's directive to the Secretary of Education to establish administrative enforcement procedures, the Court concluded that FERPA's nondisclosure provisions did not confer any privately enforceable right. Id.

Plaintiff principally argues that the salient characteristics of the text and structure of the Church Amendment differ from FERPA such that, under Gonzaga's reasoning, this Court should find that Congress intended to create a private right and a private right of action. Plaintiff's efforts to distinguish the Church Amendment, however, are unpersuasive. Like FERPA, the Church Amendment lacks the classic individual rights-creating language of Title VI and Title IX ("No person . . . shall . . . be subjected to discrimination") under which implied private rights of

6

action have been found. See Id. at 287. Moreover, when finding a private right of action under Title IX, the Supreme Court recognized that:

> [t]here would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefitted class, *had written it simply as a ban on discriminatory conduct by recipients of federal funds* or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices.

Cannon v. University of Chicago, 441 U.S. 677, 690-93 (1979) (emphasis added). Thus, although the Church Amendment is not directed to the funding agency, it speaks to the funded entity rather than to any benefitted class and, therefore, lacks the focus on individuals that would indicate the necessary congressional intent that a private right of action be implied.

Finally, as discussed at oral argument, nothing in the legislative history demonstrates congressional intent that a private right of action exist under the statute.

## Conclusion

The Court finds no basis for implying a private right of action under the Church Amendment. Accordingly, defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted. The Court declines to exercise supplemental jurisdiction over the remaining state-law claims plaintiff added by amendment on November 30, 2009, and they are dismissed. In addition, plaintiff's application for a stay pending her addition of a Title VII claim, recently filed with the EEOC and with respect to which she has not yet

7

received a right-to-sue letter, is denied.

SO ORDERED.

Dated: Brooklyn, New York
       January 1J, 2010

                                        s/ Judge Raymond J. Dearie
                                        _____
                                        RAYMOND J. DEARIE
                                        United States District Judge